The PENNSYLVANIA LAND TITLE ASSOCIATION and Fidelity Home Abstract, Inc., Individually and as Representatives of All Other Individuals and Entities Similarly Situated

v.

EAST STROUDSBURG AREA SCHOOL DISTRICT, Dr. Rachel R. Heath, Superintendent of East Stroudsburg Area School District, Pleasant Valley School District, Dr. Frank A. Pullo, Superintendent Pleasant Valley School District, June O'Neill, Chestnuthill Township Tax Collector, Helen Mackes, Eldred Township Tax Collector, Carolyn Meinhart, Polk Township Tax Collector, Jean Altemose, Ross Township Tax Collector, Alberta Tallada, East Stroudsburg Borough Tax Collector, Dawn Arnst, Middle Smithfield Tax Collector, Sharon Gerberich, Smithfield Township Tax Collector, Kathy Mosher Kroll, Price Township Tax Collector

Appeal of: East Stroudsburg Area School District, Pleasant Valley School District, Dr. Rachel R. Heath and Dr. Frank A. Pullo.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2006.
Decided Nov. 22, 2006.
Reargument Denied Jan. 12, 2007.

Helen L. Gemmill, Harrisburg, for appellants.

Jane Roach, Stroudsburg, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, FRIEDMAN, Judge, LEADBETTER, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge McGINLEY.

The East Stroudsburg School District (East Stroudsburg) and Pleasant Valley School District (Pleasant Valley) (collectively, the School Districts)[1] appeal from an order of the Court of Common Pleas of Monroe County (trial court) that granted the Pennsylvania Land Title Association's (PLTA) and Fidelity Home Abstract, Inc.'s (Fidelity) motion for peremptory judgment and issued a writ of mandamus against the School Districts.

On November 21, 2005, PLTA and Fidelity alleged in its class action[2] Complaint:

1. ... [PLTA] ... is a duly organized Pennsylvania non-stock, non-profit corporation in good standing, whose stated mission is 'the advancement of the science of evidencing and insuring title to real property and the education of its members through various seminars and other educational functions'....

2. ... Fidelity ... is a duly organized Pennsylvania corporation in good standing engaged in the business of title examination, real estate settlement services and the sale of title insurance....

3. ... East Stroudsburg ... is a school district of the Second Class and a taxing district, located in Monroe and Pike Counties ... with its administrative offices in East Stroudsburg....

....

5. ... Pleasant Valley ... is a school district of the Third Class and a taxing district located in Monroe County ... with its administrative offices in Brodheadsville, Monroe County....

....

16. ... East Stroudsburg ... and Pleasant Valley ... are Monroe County taxing districts within the meaning of the School Code, the Local Tax Collection Act, the General Assessment Act and the Real Estate Tax Sales Act.

Count I

17. The Monroe County Tax Claim Bureau, hereinafter "the Bureau" is a county office, established by the Real Estate Tax Sales Act, supervised by the Monroe County Commissioners and charged with various real estate tax collection obligations under the Real Estate Tax Sales Act.

....

19. *The Tax Collectors and or their predecessors in office have not made any returns on any school taxes for the East Stroudsburg School District to the Bureau for the tax years 2002, 2003 and 2004.* (emphasis added).

---

1. This is a civil class action in mandamus against the School Districts, the School Districts' Superintendents and eight tax collectors for a number of townships and a borough located within the School Districts' geographic boundaries in Monroe County.

2. PLTA and Fidelity also commenced this action on behalf of a class defined as:

   [A]ll individuals and entities, including but not limited to sole proprietorships, partnerships, corporations, limited liability companies and associations whose business purposes and activities require that they have access to accurate public records and to tax Certifications from the public records of the Monroe County Tax Claim Bureau and the Monroe County Prothonotary relating to property taxes for properties located in the School Districts.

Class Action Complaint In Mandamus (Complaint), November 21, 2005, Paragraph 36 at 10; Reproduced Record (R.R.) at 16a.

20. *The Tax Collectors and or their predecessors in office have not made any returns on any school taxes for the Pleasant Valley School District to the Bureau for the tax years 2002, 2003 and 2004.* (emphasis added).

21. *The Tax Collectors and or their predecessors in office have instead, apparently at the direction of the School Districts, made returns to or relinquished their books, tax duplicates, data and or records solely to the School Districts.* (emphasis added).

22. *The School Districts have pursued the collection of and have collected delinquent taxes directly, in part through the filing of municipal liens in the Office of the Prothonotary of Monroe County.* (emphasis added).

23. Plaintiffs [PLTA and Fidelity] believes [sic] and therefore avers [sic] that the Tax Collectors and the School Districts intend to continue the practice of depriving the Bureau of any returns, tax duplicates, records, data or books of school taxes, instead placing any returns and the books, tax duplicates and or records of the Tax Collectors with the School Districts.

24. The Bureau is unable to provide Plaintiff [PLTA and Fidelity], the Class and or public with Certifications or with any access to the returns, data, tax duplicates, books and records of school taxes for the real estate located within the geographic boundaries of the School Districts, for the tax years described above, as the Bureau has no control of or access to any returns of any school taxes from the Tax Collectors, or to the books, tax duplicates, data and records of the collection of such school taxes by the Tax Collectors. (footnote omitted).

25. Returns and public records for all other taxing districts in Monroe County

are duly returned to and available to the public at the Bureau.

. . . .

29. *Counsel to Plaintiffs [PLTA and Fidelity] has requested that the Tax Collectors make returns to the Bureau and they have failed and refused to do so.* (emphasis added).

30. *Counsel to Plaintiffs [PLTA and Fidelity] has requested that the School Districts return any returns, books, tax duplicates, data and records to the Bureau and they have failed and refused to do so.* (emphasis added).

31. *Counsel to Plaintiffs [PLTA and Fidelity] has requested that the School Districts relinquish all direct payments of delinquent taxes to the Bureau and they have failed to do so.* (emphasis added).

32. *The failure and refusal of the Tax Collectors and the School Districts to make returns and to relinquish the returns, books, duplicates, data and records of the Tax Collectors and receipts of direct payments of delinquent taxes to the Bureau warrants Mandamus relief* . . . . (emphasis added).

33. Plaintiffs [PLTA and Fidelity] have an immediate and complete legal right to the relief requested herein and have a beneficial interest in this matter distinct from the general public interest. . . .

34. *The ability of Plaintiffs [PLTA and Fidelity] and the Class reliably to search, to examine and to insure titles to real estate in the School Districts has been substantially impaired by the events, facts and circumstances set out above.* (emphasis added).

35. *Plaintiffs [PLTA and Fidelity] have no adequate remedy at law in that a suit for damages would not remedy the deprivation of access to public records of tax claims and payments.* (emphasis added).

Complaint, Paragraphs 1–3, 5, 16–17, 19–25, and 29–35 at 2–8; R.R. at 8a–14a.

Also, on November 21, 2005, PLTA and Fidelity sought a peremptory judgment on its mandamus claims and alleged:

4. *Plaintiffs [PLTA and Fidelity] are prepared to prove through stipulations and through the testimony of appropriate witnesses that there are no genuine issues of material fact in dispute.* (emphasis added).

5. Where there are no issues of material fact in dispute, a party requesting mandamus relief is entitled to peremptory judgment prior to the filing of a responsive pleading by the Defendants [the School Districts].

6. *Plaintiffs [PLTA and Fidelity] request an evidentiary hearing on their Motion for Peremptory Judgment.* (emphasis added).

7. The resolution of peremptory judgment prior to certification of the proposed class is warranted in that:

. . . .

c. The issuance of Peremptory Judgment prior to class certification would result in a judgment that binds the individual Plaintiffs [PLTA and Fidelity] and the Defendants [the School Districts] and not the Class; given the nature of the mandamus relief requested in this action, neither the Class nor the Defendants [the School Districts] would suffer harm if the mandamus relief is-

sued in the form of a peremptory judgment does not bind the class.

Motion For Peremptory Judgment On Mandamus Claims, November 21, 2005, Paragraphs 4–7(c) at 1; R.R. at 38a.

The trial court recounted the facts based upon the testimony [3] elicited at the December 7, 2005, hearing:

The facts of this case are as follows: Briefly since 2003 the Tax Collectors, following the instructions of the School Districts, have not made returns of delinquent school taxes for tax years 2002, 2003 and 2004 to the Monroe County Tax Claim Bureau.... Instead, the School Districts have contracted with Portnoff Law Associates, Ltd (hereinafter referred to as "Portnoff"), to act as their solicitor for purposes of collecting delinquent taxes using the provisions of the Municipal Claims and Tax Lien Act. As a result, the Bureau has no records of paid or delinquent school taxes for properties located within the two School Districts for the tax years 2002, 2003 and 2004. The School Districts are able to provide information regarding delinquent school tax records to the general public upon request; however, the information is not readily available for viewing by the general public, nor is the information updated after the delinquent taxes are forwarded to Portnoff for collection. Consequently, title searchers, title insurance companies, mortgage companies, banks, attorneys and the

3. The following parties testified: 1) Greg Christine (Christine), director of the Monroe County Tax Claim Bureau; 2) Dr. Rachael Heath (Heath), Superintendent of the East Stroudsburg School District; 3) Kathy Kroll Mosher (Mosher), tax collector for Price Township; 4) Dr. Frank Pullo (Pullo), Superintendent of the Pleasant Valley School District; 5) Donna Les (Les), business manager for Pleasant Valley School District; 6) Marie Guidry (Guidry), business manager for East Stroudsburg; 7) Robin Rodenhauser (Roden-

hauser), Chief Deputy Prothonotary for Monroe County; 8) Helen Decidue (Decidue), Recorder of Deeds for Monroe County; 9) Marshall E. Anders (Anders), attorney for Integrity Abstract; 10) Lori Cerato (Cerato), attorney and licensed insurance agent for Lawyers Title; 11) Charles Molinari (Molinari), title agent for Universal Abstract; 12) Craig Roberts (Roberts), underwriter for Lawyers Title; and 13) Michelle Portnoff (Portnoff), principal partner for Portnoff Law Associates, Ltd.

general public cannot obtain this information from the Bureau or the School Districts; instead, they must contact Portnoff. Anyone requesting information from Portnoff can receive a verbal report on the status of such taxes free of charge; however, if a written report is requested, the cost is $25.00 to $50.00 depending on whether it is an expedited request. When requesting a written report from Portnoff, it takes a minimum of five business days to receive the information for a regular request, and it takes two business days to receive the information on an expedited request. All responses to requests are sent by fax. Although identified as certifications, the reports prepared by Portnoff are not signed certifications. This same information, if it were available at the Bureau, could be viewed by the requester either in printed form by looking at the hard copy file or by using the computer terminals that are available for public use free of charge. If a tax lien certificate is requested from the Bureau, the requester would receive an "official" certification of the status of the taxes, whether paid or unpaid, on a specific parcel of real estate within a matter of minutes. The cost of this official tax lien certificate is $10.00.

Real estate attorneys and title agents who handle real estate matters regarding properties located in the School Districts have suffered monetary losses due to the lack of or inaccuracy of information regarding the status of the school taxes. They have also experienced delays in receiving information from tax records which previously had been instantly available at the Bureau. Confusion has been created for delinquent taxpayers over who they should make delinquent tax payments to—the Bureau or Portnoff. Taxpayers have also experienced problems obtaining credit because the tax liens filed by Portnoff in the Monroe County Prothonotary's Office have not been satisfied even though they have been paid. (footnote omitted).

Opinion of the Trial Court, February 2, 2006, at 2–4.

On February 2, 2006, the trial court granted the motion for peremptory judgment and issued a writ of mandamus: 1) that the School Districts and tax collectors are to make future annual returns to the Bureau; 2) that the School Districts are to provide to the Bureau all of the School Districts' books and records for tax years 2002, 2003, and 2004; 3) that the School Districts also are to provide a detailed disclosure to the Bureau of the status of all real estate taxes for the applicable tax years; 4) that the School Districts and tax collectors are to make payments for the delinquent taxes shown on the returns only to the Bureau; 5) that the School Districts are to relinquish all future payments for delinquent taxes to the Bureau and to provide to the Bureau detailed property descriptions for which the payments were made; 6) that the School Districts are to file a satisfaction of liens for payments received on municipal liens; and 7) that the School Districts are to provide full tax lien payoff information in writing, at no charge, within five business days of any written request. *See* Order of the Trial Court, February 2, 2006, at 1–2.

I. **Whether The Trial Court Erred As A Matter Of Law When It Determined That Section 306(a) Of The "Real Estate Tax Sale Law" (RETSL)[4] Was Mandatory?**

Initially, the School Districts as-

---

**4.** Act of July 7, 1947, P.L., *as amended,* 72 P.S. § 5860.306(a).

sert [5] that statutorily they chose to collect delinquent taxes pursuant to the Municipal Claims and Tax Liens Act (MCTLA) [6], 53 P.S. §§ 7101–7505 and, as a result, were not required to comply with Section 306(a) of the RETSL, 72 P.S. § 5860.306(a). The School Districts assert that under Pennsylvania law a taxing district may collect delinquent school taxes under either of the following; the MCTLA, the RETSL, or the Local Tax Collection Law (LTCL).[7]

Section 201.1(a) of the RETSL, 72 P.S. § 5860.201a(a), provides:

*In lieu of or in addition to creating a bureau,* counties are authorized to provide by ordinance for the appointment and compensation of such agents, clerks, collectors and other assistants and employes, either under existing departments, in private sector entities or otherwise as may be deemed necessary, for the collection and distribution of taxes under this act. Any alternative collection method shall be subject to all of the notices, time frames, enumerated fees and protections for the property owners contained in this act .... (emphasis added).

Section 306(a) of the RETSL, 72 P.S. § 5860.306(a), provides:

It shall be the duty of each receiver or collector of any county, city, borough, town, township, school district or institution district taxes *to make a return to the bureau* on or before the last day of April of each year, but no earlier than the first day of January of that year. *The return shall* be type written on a form provided by or acceptable to the county and shall *include a list of all properties against which taxes were levied, the whole or any part of which were due and payable in the calendar year immediately preceding and which remain unpaid, giving the description of each such property as it appears in the tax duplicate, and the name and address of the owner as it appears in the tax duplicate, together with the amount of such unpaid taxes, penalties and interest due to but not including the first day of the month following the return* .... (emphasis added).

After review of the applicable statutory authority, this Court rejects the School Districts' argument [8], and concurs in the

**5.** This Court's review is limited to a determination of whether the trial court committed an abuse of discretion, an error of law, or rendered a decision which lacked supporting evidence. *Bell v. Berks County Tax Claim Bureau,* 832 A.2d 587, 590 (Pa.Cmwlth.2003). Also, "[p]eremptory judgment in a mandamus action may be entered only where no genuine issue of material fact exists, and the case is free and clear from doubt." *Council of the City of Philadelphia v. Street,* 856 A.2d 893, 896 (Pa.Cmwlth.2004), *citing Forward Township Sanitary Sewage Authority v. Township of Forward,* 654 A.2d 170 (Pa.Cmwlth.1995).

**6.** Act of May 16, 1923, P.L. 207, *as amended,* 53 P.S. §§ 7101–7105.

**7.** Act of May 25, 1945, P.L., *as amended,* 72 P.S. §§ 5511.1–5511.42.

**8.** This Court notes that the School Districts committed the following errors, whether in-

tentional or unintentional during argument. Specifically, the School Districts argue:

The Trial Court cannot circumvent the School Districts' choice to proceed under the MCTLA by requiring the Tax Collectors to make a return to the Tax Claim Bureau under the RETSL on behalf of the School Districts. Section 5971t of the Local Tax Collection Law specifically prohibits a tax collector from making a return to the tax claim bureau if a taxing district advises that delinquent taxes will be collected by filing liens with the Prothonotary under the MCTLA. 72 P.S. § 5971t ("No tax collector shall make any return of taxes provided in this act, if the taxing authorities shall notify such tax collectors in writing that returns shall not be made, but that delinquent taxes are to be collected by the filing of liens in the office of the prothonotary."). The School Districts have given written notice

trial court's analysis that Section 306(a) of the RETSL, 72 P.S. § 5860.306(a) requires the School Districts "to make returns to the tax bureau" of all delinquent taxes:

> We have reviewed the provisions of the MCTLA and find no provision that repeals § 5860.306 requiring receivers, i.e. taxing districts, or tax collectors to make returns to the tax claim bureau. Thus, there is no conflict between the two statutes regarding the requirement for making returns of delinquent taxes to the tax claim bureau. Moreover, § 5511.21(b) of the LTCL, which authorizes a taxing district to recover unpaid taxes after a return is made to a bureau, clearly recognizes the requirement of § 5860.306. The Court in *Wallingford* [*Swarthmore School District v. Kuyumjian*, 155 Pa.Cmwlth. 635, 625 A.2d 1305 (1993)] further stated that the authority of a taxing district to recover unpaid taxes after a return has been made to a bureau has been the long standing law of this Commonwealth. *Wallingford, supra* at 1307, citing *Tremont Township School District v. Western Anthracite Coal Co.*, 364 Pa. 591, 73 A.2d 670 (1950).
>
> *Furthermore, Section 5860.201a(a) of the RETSL gives tax claim bureaus the authority to use other methods of collection, including the MCTLA, while at the same time requiring compliance with the provisions of RETSL. Similarly, the 2004 amendment to the MCTLA also gave tax claim bureaus authority to use* the procedures of that act to collect delinquent real estate taxes in addition to the procedures set forth in the RETSL. 53 P.S. Sec 7193.5. *Thus, if a tax claim bureau, as a taxing authority, is authorized to use the provisions of the MCTLA to collect delinquent taxes yet, is still required to comply with the provisions of the RETSL (72 P.S. Sec 5860.201a(a)), then it stands to reason that other taxing authorities, like the School Districts, who have opted to use the MCTLA provisions, would likewise be required to comply with the RETSL provisions.* Although not specifically stated in the statutes, we believe this compliance requirement applies to the specific provision for making returns to the tax claim bureau. It should also be noted that the Commonwealth Court in [*City of Allentown v.*] *Kauth* [, 874 A.2d 164 (Pa.Cmwlth.2005)] held that "the two statutes are very similar and operate concurrently with one another ...". *Kauth, supra,* at 169. Likewise, we find that the MCTLA and RETSL statutes are not mutually exclusive, but instead are very similar and their provisions are designed to operate in conjunction with one another. Accordingly, we believe that it is possible to give effect to the provisions of both the MCTLA and the RETSL; therefore, the provisions of these two statutory collection schemes are not irreconcilable.

....

---

to the tax collectors that their delinquent taxes will be collected by their Collection Solicitor under the MCTLA. (R. 302a–303a). Therefore, the tax collectors are statutorily barred from making returns to the Tax Claim Bureau, further demonstrating that filing returns with the RETSL is not a mandatory requirement. Brief for Appellants at 17.

First, Section 21t of the Act of May 29, 1931, P.L. 280 (Act), 72 P.S. § 5971t, was repealed and has no application to the RETSL: ("This section was repealed insofar as taxing districts coming within provisions of and operating under sections 5860.101–5860.803 of this title, by act 1947, July 7, P.L. 1368, § 801, section 5860.801 of this title"). Second, Section 21t of the Act was not part of the LTCL which is codified at 72 P.S. §§ 5511.1–5511.42.

The importance of having access to the public records is evidenced by the testimonial accounts of problems that have been encountered by real estate attorneys, title insurance agents and the general public....

....

The dominant purpose of the RETSL is to provide speedier and more efficient procedures for enforcing tax liens and *to improve the quality of titles obtained at a tax sale. Povlow [v. Brown,* 12 Pa. Cmwlth. 303, 315 A.2d 375 (1974)], *supra.* It is clear that the ability to obtain accurate and complete information has been and will continue to negatively impact the quality of titles to real estate as long as the public records for the delinquent school taxes continue to be diverted away from the Bureau. *Since the statutes are very similar and work concurrently, the choice to use the procedures of the MCTLA to collect delinquent school taxes does not relieve the School Districts or Tax Collectors of their duty to make returns to the Monroe County Tax claim Bureau as required § 5860.306 of the RETSL.* (emphasis added and in original).

Opinion of the Trial Court at 24–26 and 31.

## II. Whether The Trial Court Erred When It Determined That The Right To Know Act[9] Was Applicable?

The School Districts next contend that the Right to Know Act is not applicable because the Bureau is not solely authorized as the repository for public records of delinquent taxes or issuer of official tax certifications. Specifically, the School Districts assert they complied with all laws addressing the availability of public records.

Section 1 of the Right to Know Act, 65 P.S. § 66.1, defines the term "agency" as "any political subdivision of the Commonwealth ... or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function."

Also, Section 1 of the Right to Know Act defines the term "public record" as "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency...."

Last, Section 2 of the Right to Know Act, 65 P.S. § 66.2, provides:

(a) General rule. Unless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester in accordance with this act. A public record shall be provided to a requester in the medium requested if the public record exists in that medium; otherwise, it shall be provided in the medium in which it exists. Public records shall be available for access during the regular business hours of an agency. Nothing in this act shall provide for access to a record which is not a public record.

■ Here, it is undisputed that the School Districts, the tax collectors and the Bureau are "public" agencies and that the records of real estate tax payments by property owners are "public records" as defined by Section 1 of the Right to Know Act, 65 P.S. § 66.1. The query before this Court is whether the School Districts complied with Section 2 of the Right to Know Act, 65 P.S. § 66.2 under the challenged procedure for the collection of delinquent taxes so that the tax records are readily available to the public upon request.

9. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9.

This Court again agrees with the observations of the trial court that:

Representatives of ... East Stroudsburg ... testified that information regarding school taxes is available, upon request, at the [East Stroudsburg's] office. The testimony reveals that the information is looked up on the computer system by a school employee and the requester is given an oral report; or if requested, a printed form will be provided which shows all records paid or unpaid since 1993; however, the report will not be signed. *The testimony further revealed that members of the general public cannot sit down at a computer themselves and access the tax records on the school's database. The evidence also shows that [East Stroudsburg] is not able to provide a current figure of delinquent school taxes for 2002, 2003 or 2004 to a member of the general public because those records are not updated on [East Stroudsburg's] database once they are turned over to Portnoff for collection.* Therefore, if the request is for the status of such delinquent taxes, the requester is referred to Portnoff. *If a request is made for a tax certification, [East Stroudsburg] cannot provide certifications on any delinquent taxes. The testimony further revealed that when Portnoff files tax liens with the Prothonotary of Monroe County, copies of those liens are placed in [East Stroudsburg's] files; however, lien information is not put into the database and thus, cannot be printed out for the general public.* In that case, the requester is referred to the Monroe County Prothonotary. The testimony also revealed that the physical books are not sent to Portnoff, instead [East Stroudsburg] feeds its database pertaining to delinquent taxes to Portnoff. *The physical books are then stored in the basement of the school and are not readily* accessible *to the general public for review.* [N.T., 12/7/05: Kathy Kroll Mosher, pp. 38–48; Marie Guidry, pp. 74–85].

. . . .

The testimony of the representative for Pleasant Valley ... revealed the following: *[Pleasant Valley] maintains duplicates of the tax records at its office which are available for the public to review during normal business hours on request; however, those records only show the status of the school taxes prior to becoming delinquent because they are not updated after being sent to Portnoff.* A physical copy of the tax records is sent to Portnoff to begin the collection process. *The testimony revealed that [Pleasant Valley] is not computerized; therefore, there is no electronic database which can be searched by the school staff or the general public.* The evidence further revealed that the records for delinquent taxes for tax years 2002, 2003 and 2004 are kept at two locations-the offices of Pleasant Valley and Portnoff. *The testimony also revealed that the status of the paid delinquent bills is maintained by Portnoff, and if the collection is successful, Portnoff does not report anything to the school; however, if the collection is unsuccessful, Portnoff sends a periodic report to the school showing where they are in the collection process. Unlike, [East Stroudsburg], Pleasant Valley does not receive copies of the liens from Portnoff.* [N.T., 12/7/05: Dr. Frank Pullo, Superintendent, p. 49; Donna Les, Business Manager, pp. 56–59]. (footnote omitted and emphasis added).

Opinion of the Trial Court at 11–13.

Additionally, the evidence established that prior to the appointment of Portnoff to collect delinquent taxes for the tax years of 2002, 2003, and 2004, the Bureau

maintained public dockets and records of all real estate taxes paid in Monroe County and that those tax records were readily available to the general public and taxpayer upon request. Because the public is denied access to those tax documents, the trial court properly concluded that the School Districts violated the Right to Know Act.

## III. Whether The Trial Court Erred When It Found That The Six–Month Statute Of Limitations And The Doctrine Of Laches Were Not Applicable?

### A. Statute Of Limitations

■ The School Districts contend that PLTA's and Fidelity's claims were barred by the six-month statute of limitations in 42 Pa.C.S. § 5522(a)(2).[10] Specifically, the School Districts contend that the most recent tax year in question was 2004 and that the tax records for that year were turned over to the School Districts on January 15, 2005. Therefore, PLTA and Fidelity had six months from that date or until July 15, 2005, to file the Complaint and because the Complaint was filed on November 21, 2005, the six-month statute of limitations had run.[11]

42 Pa.C.S. § 5522(b)(2) provides:

*If the statement provided for by this subsection is not filed, any civil action or proceeding commenced against the government unit more than six months after the date of injury to person or property shall be dismissed and the person to whom any such cause of action accrued for any injury to person or property shall be forever barred from proceeding further thereon within the Commonwealth or elsewhere.* The court shall excuse failure to comply with this requirement upon a showing of reasonable excuse for failure to file such statement. (emphasis added).

There is no question that the six-month statute of limitations in 42 Pa.C.S. § 5522(b)(2) applies where a person fails to file either a *statement* or an *action* within in this time period for an alleged *injury* to either *person* or *property*. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b). Further, 42 Pa.C.S. § 5522(b)(2) can be read in conjunction with Section 8541 and Section 8542 of the Judicial Code (Code)[12], 42 Pa.C.S. §§ 8541–8542.

---

**10.** In *Thomas v. City of Philadelphia*, 861 A.2d 1023 (Pa.Cmwlth.2004), this Court noted that "['42 Pa.C.S.] § 5522 is not strictly a statute of limitations which bars the right to bring the action, but rather provides an affirmative defense to recovery.' This issue must first be raised by the governmental defendant as an affirmative defense in its answer and new matter. . . ." *Id.* at 1027 n. 8, *citing Landis v. City of Philadelphia*, 245 Pa.Super. 514, 369 A.2d 746, 749 (1976) (interpreting the Act of 1937).

However, in this case, PLTA and Fidelity filed their Complaint and motion for peremptory judgment on *November 21, 2005*. On *November 30, 2005*, the trial court ordered that an evidentiary hearing be scheduled on *December 7, 2005*, concerning PLTA's and Fi-

delity's motion for peremptory judgment. On December 14, 2005, the School Districts raised the statute of limitations argument in their supplemental brief in opposition to the motion for peremptory judgment. On *February 2, 2006*, the trial court granted PLTA's and Fidelity's motion for peremptory judgment and issued a writ of mandamus.

**11.** Obviously, the School Districts contend that for the prior tax years of 2002 and 2003, the statute of limitations period ran even earlier.

**12.** The "Political Subdivision Tort Claims Act" was the formal title which was repealed. The title is still used as the *unofficial* name for the successor provisions at Sections 8541–

Section 8541 (Governmental immunity generally) of the Code, 42 Pa.C.S. § 8541, provides that "[e]xcept as otherwise provided in this subchapter, no local agency [13]] shall be liable for any damages on account of any *injury* to a *person* or *property* caused by any act of the local agency or an employee thereof or any other person." (emphasis added).

Also, Section 8542 (Exceptions to governmental immunity), of the Code, 42 Pa. C.S. § 8542(b), provides:

A local agency shall be liable for damages on account of an *injury* to a *person* or *property* . . . if both of the following conditions are satisfied . . . [t]he damages would be recoverable under common law or a statute creating a cause of action . . . [t]he *injury* was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). (emphasis added).

Because the terms, *injury, person,* and *property* apply to tort actions under Section 8541 and Section 8542 of the Code, the six-month statute of limitations in 42 Pa. C.S. § 5522(b)(2) may also be read in pari materia with these sections and as such would bar any tort action filed after the six-month period.

However, PLTA and Fidelity did not allege in their mandamus Complaint that the School Districts, tax collectors and school superintendents were negligent and as a result of their negligence PLTA and Fidelity suffered an injury to either their person or property. Here, PLTA and Fidelity alleged that the School Districts and others failed to comply with the provisions of the RETSL which impaired their ability and the ability of the affected taxpayers to "search, examine, and insure titles" in regards to the payment of delinquent school taxes. Also, PLTA and Fidelity did not seek damages for any injury to person or property but requested that the trial court order the School Districts to comply with the RETSL. Therefore, the six-month statute of limitations did not apply to the present action and PLTA and Fidelity were not time barred from filing their Complaint.

■ Assuming *arguendo* that the six-month statute of limitations did apply, the present action would still not be time barred. Specifically, 42 Pa.C.S. § 5522(b)(3) provides:

In the case of a civil action or proceeding against a government unit other than the Commonwealth government:

. . . .

(iii) *Failure to comply with this subsection shall not be a bar if the government unit had actual or constructive notice of the incident or condition giving rise to the claim of a person.* (emphasis added).

In the present controversy, there is no question that the School Districts had actual notice of the incident that gave rise to PLTA's and Fidelity's claim. After all, it was the decision of the School Districts to abandon the provisions of the RETSL, which had been followed in Monroe County since 1947, when it ordered tax collectors to stop making any returns of public tax records to the Bureau. Again, 42 Pa.C.S. § 5522(b)(2) does not apply.

## B. Doctrine Of Laches

■ The School Districts contend that the doctrine of laches was applicable be-

---

8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542.

**13.** Local governmental agencies also include school districts. *See Wells v. Harrisburg Area School District,* 884 A.2d 946 (Pa.Cmwlth. 2005).

cause the testimony at the December 7, 2005, hearing did not establish any recent change of circumstances that made this matter more urgent and compelling now than at the time the School Districts began using Portnoff in 2003 as solicitor and delinquent tax collector.

In *Erway v. Wallace,* 51 Pa.Cmwlth. 561, 415 A.2d 116 (1980), this Court noted:

> Laches is a proper defense to an action in mandamus. Our Supreme Court has stated that although mandamus is classified as a legal remedy, it is a remedial process and is " 'generally regarded as not embraced within the statutes of limitation applicable to ordinary actions, but as subject to the equitable doctrine of laches.' " *Commonwealth ex rel. Oliver v. Wilkes–Barre,* 365 Pa. 24, 26, 73 A.2d 420, 421 (1950). . . .
>
> *Of course, the circumstances of each case must be examined to determine whether the requirements of laches are met. The defense of laches bars relief when* " *'the complaining party is guilty of want of due diligence in failing to institute his action to another's prejudice.' " Leedom v. Thomas,* 473 Pa. 193, 200, 373 A.2d 1329, 1332 (1977). *The "party claiming the benefit of the doctrine of laches must demonstrate prejudice due to lapse of time." Kay v. Kay,* 460 Pa. 680, 685, 334 A.2d 585, 587 (1975). (citations omitted and emphasis added).

*Id.* at 117.

A review of the record indicates that the School Districts have failed to identify any prejudice sustained as a result of the passage of time. At most, the School Districts would have to comply with the mandates of the RETSL as ordered by the trial court. The trial court also directed the return of all books and records for the tax years 2002, 2003, and 2004 and the payment for all delinquent taxes to the Bureau by the School Districts and the tax collectors. *See* PLTA's and Fidelity's Complaint, Request for Relief in Mandamus at 8–10; R.R. at 14a–16a. *See also* Order of the Trial Court, February 2, 2006, at 1–2. This Court agrees with the trial court that the doctrine of latches does not apply to the current controversy.

## IV. Whether The Trial Court Failed To Apply The Proper Standard When It Granted PLTA's And Fidelity's Motion For Peremptory Judgment?

Last, the School Districts contend there were numerous disputed factual issues that included the accuracy and availability of information from Portnoff, the effect on the taxpayers, the damages and inconvenience allegedly suffered by title agents and insurers, and the effect on the quality of titles in Monroe County.

In *Thayer v. Lincoln Borough,* 687 A.2d 1195 (Pa.Cmwlth.), *appeal denied,* 548 Pa. 676, 698 A.2d 598 (1997), this Court noted:

> *In a mandamus action, Rule 1098 of the Pennsylvania Rules of Civil Procedure permits a court to enter peremptory judgment at any time after the filing of the complaint if the right of the plaintiff is clear. . . .* In granting a motion for peremptory judgment under rule 1098, courts use the same standard which governs the disposition of a motion for summary judgment under Rules 1035.1– 1035.5 of the Pennsylvania Rules of Civil Procedure. *Washowich [v. McKeesport Municipal Water Authority,* 94 Pa. Cmwlth. 509, 503 A.2d 1084 (1986)] at 1086. *Thus, courts consider both the record actually presented and the potential record at the time of trial. Id. A judgment will be entered only in the clearest of cases where there is no doubt as to the absence of material fact. Id. The burden of demonstrating that there is no dispute as to a material fact is on*

*the moving party, and the record must be examined in the light most favorable to the nonmoving party. Id.* (footnote and citation omitted, emphasis added). *Thayer,* 687 A.2d at 1197.

Here, the record reflects that the following facts were not in dispute: 1) that from January 2002, through 2004, the School Districts have collected delinquent taxes under the provisions of the MCTLA; 2) that eight tax collectors have not made any returns on school taxes to the Bureau for the tax years of 2002, 2003, and 2004 taxes; and 3) that the Bureau has no records of the School Districts that document the collection or delinquency of school taxes for the tax years of 2002, 2003, and 2004. In fact, the School Districts acknowledged that there was no dispute of material facts before the trial court:

> To make it easier, I think most of the facts are agreed upon between the parties. This is a peremptory judgment case. There's some key facts that nobody disputes. I really don't see much of a need for an evidentiary hearing.
> . . . .
> . . . [I]t's just a legal question of whether or not we have a ministerial duty to turn over those records to the Bureau based on the existing statutes, and I think those are the basic facts and it's just a legal dispute as to whether that obligation exists. (emphasis added).

N.T. at 10 and 12–13; R.R. at 113a and 115–16a.

This Court agrees with the trial court's conclusion that:

> After a thorough review of the record, we find that there are no genuine issues of material fact or law. Therefore, we find that Plaintiffs [PLTA and Fidelity] have established that their legal right to the relief requested is specific and well-defined by the provisions of the RETSL;

that the School Districts, as public officials, have a ministerial duty to make returns of all delinquent school taxes to the Bureau in accordance with § 5860.306 of the RETSL; and the Plaintiffs [PLTA and Fidelity] have established that there is a lack of any other appropriate and adequate remedy. Accordingly, we find that Plaintiffs [PLTA and Fidelity] are entitled to peremptory judgment on the mandamus claims seeking to restore public tax records to the Monroe County Tax Claim Bureau and to insure the accurate satisfaction of municipal liens filed in the Monroe County Prothonotary's Office.

Opinion of the Trial Court at 32.

Accordingly, this Court affirms.

### *O R D E R*

AND NOW, this 22nd day of November, 2006, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is affirmed.