# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: County of Carbon Tax Claim       :
Bureau Judicial Sale of Land in the      :
County of Carbon Free and                :
Discharged from all Tax and              :
Municipal Claims, Mortgages, Lien        :
Charges, and Estates Whatsoever,         :
Held November 6, 2015                    :
                                         :
Lehighton Area School Dist.,             :
             Appellant   :
                                         :
        v.                  :   No. 977 C.D. 2017
                                         :
Carbon County Tax Claim Bur.             :
                                         :
                                         :
                                         :
In Re: County of Carbon Tax Claim        :
Bureau Judicial Sale of Land in the      :
County of Carbon Free and                :
Discharged from all Tax and              :
Municipal Claims, Mortgages, Lien        :
Charges, and Estates Whatsoever,         :
Held November 6, 2015                    :
                                         :
Lehighton Area School Dist.,             :
             Appellant   :
                                         :
        v.                  :   No. 978 C.D. 2017
                                         :
Carbon County Tax Claim Bur.             :
Franklin Township                        :
                                         :
                                         :
In Re: County of Carbon Tax Claim        :
Bureau Judicial Sale of Land in the      :
County of Carbon Free and                :
Discharged from all Tax and              :

Municipal Claims, Mortgages, Lien　　　　　:
Charges, and Estates Whatsoever,　　　　　:
Held November 6, 2015　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
Panther Valley School Dist.,　　　　　　　:
　　　　　　　　　　　Appellant　　　　　:
　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　　: No. 979 C.D. 2017
　　　　　　　　　　　　　　　　　　　　　: Argued: April 12, 2018
Carbon County Tax Claim Bur.　　　　　　　:


BEFORE:　　HONORABLE MARY HANNAH LEAVITT, President Judge
　　　　　　HONORABLE P. KEVIN BROBSON, Judge
　　　　　　HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT　　　　　　　　　FILED: May 18, 2018

In these consolidated appeals, Lehighton Area School District and Panther Valley School District (collectively, School Districts) appeal an order of the Court of Common Pleas of Carbon County (trial court) that denied their exceptions to the Carbon County Tax Claim Bureau's (Bureau) petition for confirmation of judicial sales and distribution of proceeds. The trial court held that because the School Districts contracted with a private entity to collect delinquent real estate taxes under what is commonly referred to as the Municipal Claims and Tax Liens Act (Tax Liens Act),[1] the delinquent amounts owed to the School Districts were not entitled to distribution as "taxes" under Section 205(d)(2) of the Real Estate Tax Sale Law (Tax Sale Law).[2] Rather, they were to be assigned a fourth priority status as "liens," to be paid only after all prior claims were paid in full. For the following reasons, we reverse and remand.

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§7101-7505.

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§5860.101-5860.803.

## Background

The parties stipulated to the following facts. At all relevant times hereto, the School Districts contracted with Portnoff Law Associates (Portnoff) to collect delinquent real estate taxes owed to the School Districts, using the procedures authorized by the Tax Liens Act. On November 6, 2015, the Bureau exposed the following three properties to judicial sale: (1) tax parcel number 83-35-B71, located at 426 Jamestown Road, Mahoning Township, Carbon County; (2) tax parcel number 70C-12-72, located at 1100 and 1096 Main Road, Franklin Township, Carbon County; and (3) tax parcel number 123A-24-J33, located at 4 West Abbott Street, Lansford, Carbon County. Stipulation of Facts ¶4; Reproduced Record at 130a, 132a, 134a (R.R. __). The judicial sale was conducted in accordance with the Tax Sale Law, and all three properties were sold to the highest bidder. Following the sale, the School Districts submitted a claim for their share of the proceeds for delinquent real estate taxes due on each property plus commissions, attorney fees, and other costs and expenses.[3] Stipulation of Facts ¶5; R.R. 131a, 133a, 135a.

On April 29, 2016, the Bureau filed petitions for confirmation of the judicial sales along with proposed schedules of distribution of the proceeds of the

---

[3] Specifically, tax parcel number 83-35-B71 was sold for $4,600. Lehighton Area School District claimed it was owed $1,448.90 for 2013 and $1,222.17 for 2014 with respect to this property. These balances consist of unpaid real estate taxes, commissions, attorney fees, and other costs and expenses. Stipulation of Facts ¶5; R.R. 131a.

Tax parcel number 70C-12-72 was sold for $21,000. Lehighton Area School District claimed it was owed $2,916.49 for tax year 2014 for this property. This balance consists of unpaid real estate taxes for 2014, commissions, attorney fees, and other costs and expenses. Stipulation of Facts ¶5; R.R. 133a.

Tax parcel number 123A-24-J33 was sold for $4,200. Panther Valley School District claimed it was owed $1,766.13 for 2013 and $1,365.97 for 2014 with respect to this property. These balances consist of unpaid real estate taxes for 2013 and 2014, commissions, attorney fees, and other costs and expenses. Stipulation of Facts ¶5; R.R. 135a.

2

sales. Each distribution schedule included the county and the township's property tax claims but not the School Districts' tax claims.

The School Districts filed exceptions to the Bureau's petitions for confirmation of distribution, contending that proceeds generated by a sale under the Tax Sale Law must be distributed "to the respective taxing districts in proportion to the taxes due them." Exceptions to Bureau's Petition for Confirmation of Distribution, ¶10; R.R. 31a, 41a, 51a. By not treating the delinquent amounts owed to the School Districts as taxes, the proposed schedules of distribution violated Section 205(d) of the Tax Sale Law. Alternatively, the School Districts argued that the face amount of the tax, penalty, and interest plainly constituted "taxes," even if attorney fees and commissions did not qualify as such. The School Districts provided an itemized breakdown for the delinquent balances for each of the properties, including "face/penalty, commission, interest, attorney's fees, costs, and notice expense." Exceptions, ¶6; R.R. 30a, 40a, 50a.

The Bureau responded that the School Districts opted out of the Bureau's collection of real estate taxes under the Tax Sale Law when they hired Portnoff to collect delinquent taxes under the Tax Liens Act. The "unavoidable consequence," the Bureau maintained, was that the School Districts' "[Tax Liens Act] liens – which also include Portnoff Law Associates' commissions, legal fees and costs – do not qualify as taxes under [the Tax Sale Law], and therefore, are not payable as second-priority *taxes* under [Section 205(d)(2) of the Tax Sale Law]." Bureau's Response to School Districts' Exceptions at 3; R.R. 92a (emphasis in original). The Bureau contended that the School Districts' claims are payable only "to the extent that there are any excess funds available for payment of fourth-priority *liens* under [Section 205(d)(4) of the Tax Sale Law]." *Id*. (emphasis in original). In

3

support, the Bureau pointed to Section 102 of the Tax Sale Law, which defines "taxes" as "all taxes, with added interest and penalties, levied by a tax district upon real property, including improvements." 72 P.S. §5860.102. The definition does not include commissions, attorney fees, and costs. To give the School Districts' "inflated liens" the priority of "taxes" under Section 205(d)(2) of the Tax Sale Law, the Bureau argued, would cause the county and the township "to subsidize the additional costs of [the School Districts'] independent collection efforts under [the Tax Liens Act] by reducing their shares of the excess proceeds by the amount of [Portnoff's] various additional commissions, attorney fees, and costs under that statute." Bureau's Response to School Districts' Exceptions at 4; R.R. 93a. The Bureau maintained that such distribution would cause "a fundamental unfairness" upon the county and the township. *Id*.

## Trial Court Decision

The parties stipulated to the material facts, and on November 18, 2016, the trial court heard oral argument. By opinion and order dated June 20, 2017, the trial court denied the School Districts' exceptions.

The trial court acknowledged that the tax collection scheme set forth in the Tax Sale Law was optional, not mandatory, for the School Districts. However, it concluded that once they elected to "opt out of the Bureau's collection services [under the Tax Sale Law]," the Bureau "is not authorized to act as the School Districts' agent for tax collection purposes." Trial Court op. at 7-8.

The trial court also concluded that the School Districts' delinquent balances against the three properties were not "tax claims" because the commissions, attorney fees, costs and expenses included therein are not "taxes" under Section 102 of the Tax Sale Law. The trial court noted that Section 1 of the Tax Liens Act defines

4

"taxes" to include "reasonable attorney fees." 53 P.S. §7101. Nevertheless, the trial court reasoned that this definition had no application to a judicial sale conducted under the Tax Sale Law. Trial Court op. at 11 (citing *Gordon v. City of Harrisburg*, 171 A. 277, 278 (Pa. 1934) (holding that "[w]hen a tax sale is commenced under a particular Act of Assembly, the procedure therein prescribed must be followed and under that act alone must the validity and effect of the sale be tested.")).

The trial court held that the delinquent taxes owed to the School Districts were not entitled to distribution as a second priority claim under Section 205(d)(2) of the Tax Sale Law.

## Appeal

The School Districts appealed to this Court.[4] The trial court issued an order directing them to file a statement of errors complained of on appeal. *See* PA. R.A.P. 1925(b).[5] The School Districts filed the statement on August 8, 2017, asserting that the trial court erred in holding that the School Districts' decision to collect real estate taxes under the Tax Liens Act "transformed [their] taxes into something *other than taxes* for purposes of second priority status" under Section 205(d)(2) of the Tax Sale Law. School Districts' 1925(b) Statement at 1-2 (emphasis in original). The School Districts further argued that the trial court ignored their alternative argument that, to the extent the commissions, attorney fees, and costs are

---

[4] This Court's review in a tax sale case determines whether the trial court abused its discretion, rendered a decision which lacked supporting evidence or clearly erred as a matter of law. *City of Allentown v. Kauth*, 874 A.2d 164, 165 n.4 (Pa. Cmwlth. 2005).

[5] It states in pertinent part:

> If the judge entering the order giving rise to the notice of appeal ("judge") desires clarification of the errors complained of on appeal, the judge may enter an order directing the appellant to file of record in the trial court and serve on the judge a concise statement of the errors complained of on appeal ("Statement").

PA. R.A.P. 1925(b).

not "taxes," the remainder, *i.e.*, the face amount of the tax, together with penalties and interest, must be given second priority status under Section 205(d)(2) of the Tax Sale Law. *Id*. at 2. To hold otherwise would not "effectuate a just and equitable result." *Id*. at 3.

The trial court issued an opinion pursuant to PA. R.A.P. 1925(a)(1),[6] reiterating that the taxes owed to the School Districts, along with penalties and interest, were not entitled to distribution as tax claims under Section 205(d)(2) of the Tax Sale Law. Emphasizing that the School Districts chose to retain Portnoff to collect their delinquent real estate taxes, the trial court explained that "[w]ithout the authority that is granted when a taxing district elects to utilize a tax claim bureau, the bureau could not collect any amount of tax for the School Districts on those properties." Trial Court 1925(a) op. at 10 (citing *City of Allentown v. Kauth,* 874 A.2d 164, 168 (Pa. Cmwlth. 2005)). The trial court held that the School Districts' claims must take fourth priority status under the Tax Sale Law as "liens," for which funds were not available.

On appeal to this Court, the School Districts argue that the trial court erred. They argue that their decision to collect delinquent taxes under the Tax Liens Act did not deprive them of their right to distribution of the proceeds realized by a judicial sale under the Tax Sale Law. For purposes of this appeal, the School Districts have decided to "forego" the argument that the commissions, costs, and

---

[6] Rule 1925(a)(1) states, in relevant part, as follows:

> [U]pon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall forthwith file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of, or shall specify in writing the place in the record where such reasons may be found.

PA. R.A.P. 1925(a)(1).

attorney fees incurred under the Tax Liens Act are also entitled to second priority status under the Tax Sale Law. School Districts' Brief at 7.[7]

**Analysis**

We begin with a review of the relevant law. The Tax Liens Act was enacted in 1923 and governs, *inter alia*, the methods for levying and preserving municipal tax liens and the effect of judicial sales on liened property. In pertinent part, Section 1 of the Tax Liens Act[8] provides that "all taxes" imposed on real property by municipalities, including school districts,[9] are "a first lien" on such property, subordinate only to tax liens imposed by the Commonwealth. 53 P.S. §7102.

The Tax Sale Law was enacted in 1947 for the purpose of providing "speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale." *Pennsylvania Land Title Association v. East Stroudsburg Area School District*, 913 A.2d 961, 968 (Pa. Cmwlth. 2006). The Tax Sale Law creates tax claim bureaus in each county (other than counties of the first and second class) and gives "taxing districts," such as counties, townships, and school districts, the opportunity to return delinquent taxes to the bureaus for collection.

---

[7] Nevertheless, the Bureau argues the School Districts' inclusion of commissions, costs, and attorney fees in their claims for proceeds removed the entire tax claims "from any consideration as 'taxes' under [the Tax Sale Law]." Bureau Brief at 7-8. We do not address that issue.

[8] Act of March 21, 1945, P.L. 47, 53 P.S. §7102.

[9] The term "municipality," as used in the Tax Liens Act, "means any county, city, borough, incorporated town, township, school district, or a body politic and corporate created as a Municipal Authority pursuant to law and any assignees thereof." Section 1 of the Tax Liens Act, 53 P.S. §7101.

7

Notably, the Tax Sale Law did not repeal the Tax Liens Act "because it was not intended to be a substitute for the Tax Liens Act and did not establish a uniform and mandatory system of tax collection." *Pacella v. Washington County Tax Claim Bureau*, 10 A.3d 422, 429 (Pa. Cmwlth. 2010). *See also Kauth*, 874 A.2d at 169 (holding that "[the Tax Sale Law and the Tax Liens Act] are very similar and operate concurrently with one another, due to the fact that [the Tax Sale Law] establishes an alternative for the collection of delinquent tax claims, but not a mandatory alternative."). Section 201.1(a) of the Tax Sale Law[10] provides, in relevant part:

> *In lieu of or in addition to creating a bureau*, counties are authorized to provide by ordinance for the appointment and compensation of such agents, clerks, collectors and other assistants and employes, either under existing departments, in private sector entities or otherwise as may be deemed necessary, for the collection and distribution of taxes under this act. Any alternative collection method shall be subject to all of the notices, time frames, enumerated fees and protections for the property owners contained in this act....

72 P.S. §5860.201a(a) (emphasis added). This Court has held that tax claim bureaus created under the Tax Sale Law become operative only to the extent counties and municipalities elect to use them. *Kauth*, 874 A.2d at 168.

Here, the Bureau conducted the judicial sales under the Tax Sale Law and then proposed to distribute the sales proceeds pursuant to that statute. This requires an examination of the provisions of the Tax Sale Law on distribution. *Gordon*, 171 A. at 278 ("[w]hen a tax sale is commenced under a particular Act of

---

[10] Added by the Act of March 22, 2002, P.L. 205, No. 16.

8

Assembly, the procedure therein prescribed must be followed and under that act alone must the validity and effect of the sale be tested.").

As does the Tax Liens Act, the Tax Sale Law establishes that "all taxes" levied on property "by any taxing district" are considered "a first lien" on the property, subordinate only to tax liens imposed by the Commonwealth. Section 301 of the Tax Sale Law, 72 P.S. §5860.301. Section 205(d) of the Tax Sale Law further provides:

> (d) *It shall be the duty of the bureau to distribute all moneys collected as the result of any tax sale conducted under the provisions of this act, less the deductions authorized by subsection (c), in the following manner and according to the following priority*:
>
>> (1) First, to the Commonwealth, by payment to the State Treasurer through the Department of Revenue, for satisfaction of tax liens of the Commonwealth only if the total amount of such liens or such portion thereof have been included in the purchase price and paid by the purchaser or the property is sold at judicial sale pursuant to this act.
>>
>> (2) *Second, to the respective taxing districts in proportion to the taxes due them.*
>>
>> (3) Third, to taxing districts or municipal authorities for satisfaction of municipal claims.
>>
>> (4) Fourth, to mortgagees and other lien holders, in order of their priority, for satisfaction of mortgages and liens as they may appear of record, whether or not discharged by the sale.
>>
>> (5) Fifth, to the owner of the property.

72 P.S. §5860.205(d) (emphasis added). School Districts argue that Section 205(d)(2) of the Tax Sale Law required the Bureau to distribute the proceeds of the

9

judicial sales proportionately to satisfy the tax delinquencies on the properties. We agree.

Section 205(d)(2) requires distribution to the "respective taxing districts in proportion to the taxes due them." 72 P.S. §5860.205(d)(2). Section 102 of the Tax Sale Law defines "taxing district" as including "any county, city, borough, incorporated town, township, home rule municipality, optional plan municipality, optional charter municipality, *school district*, institution district or any similar general purpose unit of government which may be created or authorized by statute…." 72 P.S. §5860.102 (emphasis added). Section 102 further defines "taxes" as "all taxes, with added interest and penalties, levied by a taxing district upon real property, including improvements." 72 P.S. §5860.102. Section 102 could not be any clearer: the School Districts are "taxing districts" and the real estate taxes owed to them, "with added interest and penalties," are "taxes" for the purposes of the Tax Sale Law.

In holding that the School Districts' tax claims took fourth priority under the Tax Sale Law, the trial court erred. Both the Tax Liens Act and Tax Sale Law provide that "all taxes" imposed on real property by taxing districts, including school districts, are "a first lien" on real property, subordinate only to tax liens imposed by the Commonwealth. Section 1 of the Tax Liens Act, 53 P.S. §7102; Section 301 of the Tax Sale Law, 72 P.S. §5860.301. The Tax Liens Act and Tax Sale Law are "not mutually exclusive, but instead are very similar and their provisions are designed to operate in conjunction with one another." *Pennsylvania Land Title Association*, 913 A.2d at 968. When possible, courts shall "give effect to the provisions of both the [Tax Liens Act and Tax Sale Law]." *Id*.

10

**Conclusion**

For the foregoing reasons, we conclude that the trial court erred in holding that the School Districts' property tax claims have a fourth priority status under Section 205(d)(4) of the Tax Sale Law. Rather, the delinquent taxes owed to the School Districts are entitled to second priority status under Section 205(d)(2) of the Tax Sale Law. The trial court's decision is reversed, and the matter is remanded for a determination regarding the distribution of the sales proceeds in accordance with this opinion.

_____
MARY HANNAH LEAVITT, President Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: County of Carbon Tax Claim : 
Bureau Judicial Sale of Land in the : 
County of Carbon Free and : 
Discharged from all Tax and : 
Municipal Claims, Mortgages, Lien : 
Charges, and Estates Whatsoever, : 
Held November 6, 2015 : 
: 
Lehighton Area School Dist., : 
               Appellant : 
: 
        v. : No. 977 C.D. 2017
: 
Carbon County Tax Claim Bur. : 
: 
: 
: 
In Re: County of Carbon Tax Claim : 
Bureau Judicial Sale of Land in the : 
County of Carbon Free and : 
Discharged from all Tax and : 
Municipal Claims, Mortgages, Lien : 
Charges, and Estates Whatsoever, : 
Held November 6, 2015 : 
: 
Lehighton Area School Dist., : 
               Appellant : 
: 
        v. : No. 978 C.D. 2017
: 
Carbon County Tax Claim Bur. : 
Franklin Township : 
: 
: 
In Re: County of Carbon Tax Claim : 
Bureau Judicial Sale of Land in the : 
County of Carbon Free and : 
Discharged from all Tax and :

Municipal Claims, Mortgages, Lien      :
Charges, and Estates Whatsoever,       :
Held November 6, 2015                   :
                                        :
Panther Valley School Dist.,            :
                    Appellant           :
                                        :
            v.                          :  No. 979 C.D. 2017
                                        :
Carbon County Tax Claim Bur.            :

**O R D E R**


            AND NOW, this 18th day of May, 2018, the order of the Court of

Common Pleas of Carbon County in the above-captioned matter, dated June 20,

2017, is hereby REVERSED.  This matter is REMANDED for further proceedings

consistent with this opinion.

            Jurisdiction relinquished.


                        _____
                        MARY HANNAH LEAVITT, President Judge