**John RIVERA and Esther Q. Rivera**

v.

**CARBON COUNTY TAX CLAIM BUREAU and Jason Keller,**

**Appeal of Jason Keller.**

Commonwealth Court of Pennsylvania.

Argued June 9, 2004.

Decided Sept. 1, 2004.

---

Anthony Roberti, Jim Thorpe, for appellant.

Joseph J. Matika, Summit Hill, for appellees, J. Rivera and E. Rivera.

Vincent R. Garvey, Jr., Hazelton, for appellee, Carbon Cnty. Tax Claim Bureau.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Jason Keller (Keller) appeals from a final order of the Court of Common Pleas of Carbon County (trial court), which granted the petition to set aside judicial sale filed by John Rivera and Esther Q. Rivera (collectively, the "Riveras") and voided the deed conveyed to Keller.

The facts of this case are as follows. On December 10, 2001, property located at Lot D1845 Wylie Circle, Towamensing Trails in Albrightsville, Carbon County, Pennsylvania (property) was sold at judicial sale for unpaid 1998 and 1999 real estate taxes. Keller was the successful bidder for the property. The Carbon County Tax Claim Bureau (Bureau) transferred title for the property to Keller.

On January 9, 2002, the Riveras filed a petition to set aside judicial sale of the property.[1] The Riveras were the owners, by last recorded deed, of the property. In the petition, the Riveras alleged that the sale of the property to Keller was invalid on the basis that the Bureau failed to satisfy the notice requirements of the Real Estate Tax Sale Law (Law).[2] On April 9, 2002, Keller filed a petition for value of improvements (petition for improvements) pursuant to Section 20 of the Act of April 12, 1842, P.L. 262, 72 P.S. § 5875.[3]

A hearing was held on October 15, 2002. Based upon the testimony and evidence presented, the trial court found that the Riveras, in the summer of 1999, without notice to the Bureau, moved from Staten

---

1. The Riveras did not name Keller in the petition; Keller filed a petition to intervene, which was granted.

2. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.601–5860.803.

3. In the petition for improvements, Keller requested a jury trial.

Island, New York to Allentown, Pennsylvania. On September 22, 2000, the Riveras' property was exposed to an upset sale based upon their failure to pay the property taxes for 1998 and 1999.[4] The Bureau forwarded notices of the impending upset sale to the Riveras at the Staten Island address via certified mail on or about July 11, 2000. Neither the notices nor the return receipt cards were returned. On July 19, 2000, the Bureau posted notice of the upset sale on the Riveras' property. The Bureau attempted to personally serve the Riveras with notice, but to no avail. On August 11, 2000, the Bureau advertised the upset sale in the Carbon County Law Journal.

The upset sale was held on September 22, 2000, but the property was not sold. Thereafter, the Bureau petitioned the trial court to sell the property at judicial sale, which was granted. The notices for the judicial sale were again mailed to the Riveras at the Staten Island address. These notices were returned and marked "moved, left no address and unable to forward." On November 12, 2001, Esther Rivera contacted the Carbon County Tax Collector to inform her of their new address in Allentown. On December 10, 2001, without further notice to the Riveras, the property was sold to Keller at the judicial sale for $2,467.70.

The trial court concluded that the Bureau failed to provide adequate notice to the Riveras of the judicial sale as required the Law. When the judicial sale notices were returned, it was incumbent upon the Bureau to take reasonable efforts to notify the Riveras of the impending judicial sale. The Tax Collector became aware of the Riveras' new Allentown address in November 2001, one month prior to the judicial sale. Had the Bureau simply contacted the Tax Collector, it would have been able to notify the Riveras of the judicial sale. Having failed to avail itself of the information known to the local Tax Collector, which was well within its grasp, the trial court concluded that the Bureau failed to exercise the reasonable efforts required by Section 607.1 of the Law, 72 P.S. § 5860.607a.[5]

---

**4.** The Riveras had purchased the property in August 1990 and for the next eight years paid all the property taxes imposed. Reproduced Record (R.R.) at 156a. In 1998, the Riveras paid the school taxes, but failed to pay the requisite municipal and county taxes. R.R. at 105a–106a, 156a–157a. In 1999, the Riveras failed to pay the mandatory school tax. *Id.* The taxes for 2000 and 2001 were all paid. R.R. at 106a.

**5.** *Added by* the Act of July 3, 1986, P.L. 351. Section 607.1 provides:

(a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

By order dated May 28, 2003, the trial court declared the judicial sale and deed to be null and void. Keller then filed timely post-trial motions, which the trial court denied. Keller now files the instant appeal.[6] Keller raises the following issues for our review:

1. Does this Court have jurisdiction to review the trial court's order since the trial court has not ruled on the petition for improvements?
2. Were the Riveras "aggrieved persons" with legal standing to attack the validity of the judicial sale?
3. Did the trial court have subject matter jurisdiction to grant the relief requested?
4. Did the Riveras have "implied" or "constructive" notice of judicial sale, thereby waiving alleged defective notice of sale?

First, Keller contends that this Court has jurisdiction to review the trial court's order setting aside the sale despite the fact that the petition for improvements is still pending. We agree.

The "additional reasonable notification efforts" requirement applies to judicial, as well as upset, tax sales. *In re Sale No. 10*, 801 A.2d 1280 (Pa.Cmwlth.2002).

6. The trial court did not dispose of Keller's petition for improvements.

7. Rule 341(c) provides that

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than

■ This Court has appellate jurisdiction over "final orders" of the administrative agencies or courts of common pleas. Pa. R.A.P. 341; *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). A final order is any order that: (1) disposes of all claims and of all parties; or (2) any order that is expressly defined as a final order by statute; or (3) any order entered as a final order pursuant to subdivision (c) of this rule.[7] Pa. R.A.P. 341. The purpose of limiting appellate review to final orders is to prevent piecemeal determinations and the consequent protraction of litigation. *Green Mountain Energy Company v. Pennsylvania Public Utility Commission*, 812 A.2d 740 (Pa.Cmwlth.2002), *petition for allowance of appeal denied*, 574 Pa. 776, 833 A.2d 145 (2003).

Interlocutory and collateral orders, which by definition are not final, may become appealable under certain circumstances. An appeal from an interlocutory order may be taken as of right pursuant to Rule 311 of the Pennsylvania Rules of Appellate Procedure.[8] Of relevance to this

> all the claims and parties shall not constitute a final order.

8. An appeal from an interlocutory order may also be taken by permission pursuant to Rules 312 and 1311 of the Pennsylvania Rules of Appellate Procedure and as of right from a collateral order pursuant to Rule 313. In his brief, Keller argues that the trial court's order is a collateral order and therefore appealable as of right. We do not agree.

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. *Id.; Pugar*, 483 Pa. at 73, 394 A.2d at 545. The rule allowing appeal from collateral orders must be applied narrowly and all three elements of the definition must be met. *Green Mountain.* Narrow application prevents the collateral

discussion is Rule 311(a)(2), which provides that an appeal may be taken as of right from:

An order confirming, modifying or dissolving or refusing to confirm, modify or dissolve an attachment, custodianship, receivership or *similar matter affecting the possession or control of property*, except for orders pursuant to Sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. §§ 3323(f) and 3505(a).

(Emphasis added).

■ Applying these standards to the present matter, we conclude that this Court has jurisdiction of this appeal. While the trial court's order setting aside the judicial sale would ordinarily constitute a final order, the fact that the petition for improvements is still pending with the trial court has rendered the order interlocutory.[9] Pursuant to Pa. R.A.P. 311(a)(2), when an interlocutory order affects "the possession or control of property," the order is appealable as of right. In this case, once the trial court set aside the sale, Keller was divested of his right to possess the property. As a result, the trial court's order is appealable as of right.[10]

■ Next, Keller contends that the Riveras were divested of ownership following the upset sale and were not legal owners on the date of the judicial sale and therefore are not aggrieved persons with legal standing to attack the validity of the judicial sale. We disagree.

Section 610 of the Law, 72 P.S. § 5860.610, provides that in cases where property is listed for upset sale, but the upset price is not bid, the sale shall be continued, and the Bureau may file a petition in the court of common pleas of the county to sell the property by judicial sale under Sections 612 and 612.1 [11] of the Law, 72 P.S. §§ 5860.612, 5860.612–1. In the petition, the Bureau must set forth:

(1) the tax claim upon which the property was exposed for sale,

(2) that neither the owner, his heirs or legal representatives or any lien creditor, his heirs, assigns or legal representatives or other person interested has caused stay of sale, discharge of tax claim or removal from sale,

(3) that the property was exposed to public sale and the date of such sale,

(4) that before exposing the property to public sale the bureau fixed an upset price, as herein provided, and

(5) that it was unable to obtain a bid sufficient to pay said upset price.

---

order doctrine from subsuming the fundamental general precept that only final orders are appealable and from causing litigation to be interrupted and delayed by piecemeal review of trial court decisions. *Id.*

Based upon our review, the trial court's order fails to meet all three prongs of the definition. The trial court's order setting aside the sale is not separable from or collateral to the main cause of action because the validity of the judicial sale is the main cause of action. Moreover, no claim will be irreparably lost if review would be postponed.

9. We note that the petition for improvements is a separate claim under a separate statute which, for all intents and purposes, does not actually arise until a tax sale has been set

aside. While it appears that Keller filed the petition for improvements in the within action to preserve his claim, we note that the petition for improvements could have been filed, in a separate action, after the judicial sale was declared null and void. *See Neeld v. Cunningham*, 216 Pa. 523, 65 A. 1095 (1907).

10. We further note that if this Court was to reverse the trial court's order, the petition for improvements would be rendered moot. Thus, an immediate appeal facilitates resolution of the entire case.

11. *Added by* the Act of May 20, 1949, P.L. 1579, *as amended.*

Section 610 of the Law. "Upon the presentation of such petition, accompanied with searches, showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgages, ground rents, charges and estates against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents." *Id.*

■ Service of the rule to show cause why a property should not be sold at judicial sale shall be made upon all parties of interest named in the rule. Section 610 of the Law; Section 611 of the Law, 72 P.S. § 5860.611. An owner is a party of interest. *Montgomery County Tax Claim Bureau v. Mermelstein Family Trust*, 836 A.2d 1010 (Pa.Cmwlth.2003); *Bell v. Berks County Tax Claim Bureau*, 832 A.2d 587 (Pa.Cmwlth.2003); *In re Tax Claim Bureau of Lehigh County Sale No. 49–28*, 702 A.2d 1105 (Pa.Cmwlth.1997). "Owner" is defined by the Law as "the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording...." Section 102 of the Law, 72 P.S. § 5860.102.

■ The notice provisions of the Law guard against the deprivation of property without due process of law. *Difenderfer v. Carbon County Tax Claim Bureau*, 789 A.2d 366, 368 (Pa.Cmwlth.2001). Strict compliance with the notice provisions is required because the "tax sale laws were enacted with the primary purpose of insuring the collection of taxes, and not to strip away citizens' property rights." *Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985); *Stanford–Gale v. Tax Claim Bureau of Susquehanna County*, 816 A.2d 1214, 1216 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 573 Pa. 718, 828 A.2d 351 (2003).

In support of his position that the Rivers were no longer the "owners" of the property following the upset sale, Keller relies upon *Commonwealth v. Sprock*, 795 A.2d 1100 (Pa.Cmwlth.2002). In *Sprock*, Rose and Carl Sprock (the "Sprocks") were the record owners of certain property, but failed to pay the property taxes. As a result, the Bureau exposed the property to an upset tax sale, but no bids were received. The Bureau took no further action, but simply retained the property in its inventory of unsold properties. Ten years later, the Sprocks were charged of violating the city's safe property maintenance ordinance for failing to maintain the property. In entering a judgment of conviction, the trial court determined that the Sprocks were the owners of the property for purposes of the local ordinance and were therefore liable for the violations.

■ On appeal to this Court, we looked beyond the deed to see if there was some person or entity who exercises "control" in some capacity of the property and determined that that entity was the tax claim bureau. At the conclusion of the upset sale, the tax claim bureau became the "trustee" of the property. *Sprock*. Applying the maintenance ordinance's definition of "owner," which included "trustee,"[12] we concluded that the Sprocks

12. The ordinance defined an "owner" as:
    any person or persons, jointly or severally, firm, corporation or other entity which, either by conveyance or inheritance or otherwise, is vested with the title to a lot and/or improvement thereto or who retains the

were not liable for the violations because they no longer controlled the property. *Id.* We stated:

> Sections 608 and 615 of the Law [72 P.S. §§ 5860.608, 5860.615] instruct that the deed to a tax delinquent property sold at an upset sale shall be conveyed by the bureau as trustee, which is a person or entity holding legal title to property for the benefit of another. Thus, it is clear that a tax claim bureau must become trustee of a property at the moment it concludes the upset sale, that is, when the property is struck down, and legal title to the tax delinquent property passes to the tax claim bureau, as trustee, at that time, which is the most appropriate time for that to happen because the owner's right of redemption at that time is extinguished.

*Id.*, 795 A.2d at 1103. "[A]t an upset sale, where there are no bids of the upset sale price, all rights in the property, i.e., legal title, are transferred from the owners of the property to the tax claim bureau, as trustee, by operation of law." *Id.* at 1103, n. 9; *accord Bell*, 832 A.2d at 591.

In *Sprock*, neither the notice requirements under the Law nor the Bureau's authority to assume legal title of the property were at issue. Rather, *Sprock* dealt with the narrow question of whether for purposes of criminal prosecution under a local property maintenance ordinance, the party charged was the "owner" under the applicable ordinance. Recently, in *Mermelstein*, this Court examined *Sprock* in conjunction with the notice provisions under the Law.

In *Mermelstein*, upon the recording of a deed, a family trust became the record owner of the property. Shortly thereafter,

> exclusive control of such a lot and/or improvements thereto in his capacity as a legal representative, such as an administrator, trustee, executor, etc.

the property was exposed at an upset sale at which no bids were received. In an effort to expose the property for judicial sale, the Bureau filed two petitions with the trial court: a petition for rule to show cause why the property should not be sold at judicial sale pursuant to Section 610 of the Law and a petition requesting special service of that petition. The rule return date and the hearing on the rule were scheduled. This hearing was the sole opportunity for interested parties to appear and contest the validity of a judicial sale of the property. *Mermelstein*, 836 A.2d at 1012 (citing Sections 610 and 612 of the Law).

The record owner of the property, the trust, did not receive service of the rule as required by Section 611 of the Law. The trust neither answered the rule nor appeared at the hearing on the rule. Six days after the hearing on the rule, the Bureau sold the property at judicial sale. Thereafter, the trust filed objections and exceptions, requesting that the sale be set aside on the basis that it did not receive notice of the rule. On this basis, the trial court voided the judicial sale, invalidated the deed issued as a result of the sale and directed the trust to pay all delinquent taxes on the property within 30 days. *Mermelstein*.

On appeal to this Court, the purchasers of the property, relying on *Sprock*, argued that the trust was not entitled to service of the rule. We disagreed and opined that "*Sprock* does not hold that the record owner of a property is not entitled to notice of the rule after an upset sale." *Id.* at 1013. We continued:

*Sprock*, 795 A.2d at 1101.

The requirements for judicial sales are found in Sections 610 through 612.1 of the Law. Under Section 610 of the Law, where the upset price is not bid at an upset sale, a tax claim bureau may petition the trial court for a rule to sell the property at a judicial sale free and clear of all claims, liens and mortgages. Section 610 of the Law, 72 P.S. § 5860.610. The rule must be personally served on any party with an identifiable interest in the property by person or by registered mail, followed by a hearing and an order of court directing the property be sold free and clear. Sections 611 and 612 of the Law, 72 P.S. §§ 5860.611, 5860.612; *In re Serfass,* 651 A.2d 677 (Pa.Cmwlth. 1994).

*Id.* Upon determining that the tax sale of real property was invalid as the record owner was not served with the predicate rule to show cause, we affirmed the order of the trial court setting aside the judicial sale. *Id.*

■ Based upon our reading of *Mermelstein,* we hold that the divestiture of ownership following exposure of a property to an upset sale, as discussed in *Sprock,* cannot occur when the notice provisions of the Law are shown to be defective. Legal title to a property can only pass to the Bureau when the statutory requirements of the Law have been met. As the trial court aptly stated "the transference of legal title from owner of record to tax bureau is predicated upon the statutory authority to do so." R.R. at 178a.

In this case, the Riveras, as the record owners of the property, were entitled to notice. The trial court found and the record supports that the Riveras received no notice of the upset sale or the judicial sale and that the Bureau failed to take reasonable efforts to notify the Riveras of the sale as required by Law. Because the notice provisions of the Law were not met,

the exposure of the property to an upset sale did not divest the Riveras of ownership. Accordingly, the Riveras have standing to attack the validity of the judicial sale.

Next, Keller argues that the trial court did not have subject matter jurisdiction to grant the redemption as the redemption period had expired after the upset sale. We disagree.

Section 607(g) of the Law, 72 P.S. § 5860.607(g), provides that, after an upset sale, the owner is precluded from redeeming the property. Specifically, the statute provides, "[t]here shall be no period of redemption after such sale." Section 607(g) of the Law. Redemption is only precluded when the sale is "confirmed absolutely." *Id.* This occurs "if no objections or exceptions are filed, or where objections or exceptions are finally overruled." *Id.* Once the sale is confirmed absolutely, no right of redemption can exist in a former owner and the proceedings of the Bureau with respect to the sale shall not be inquired into judicially "*except* with respect to the giving of notice under the act...." *Id.* (emphasis added).

■ In this case, the Riveras challenged the sale on the basis that the Bureau failed to give proper notice under the Law. Having established that the Bureau did not comply with statutory notice requirements, it follows that the Riveras' redemption rights remain extant. To conclude otherwise would render judicial inquiry into whether proper notice was effected a futile investigation without remedy.

■ Keller also asserts that only the taxing districts have the jurisdiction and authority to permit a delinquent taxpayer to pay the back taxes after the redemption period has expired. In support of this position, Keller cites to *Getson v. Somerset County Tax Claim Bureau,* 696 A.2d 903

(Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 553 Pa. 684, 717 A.2d 535 (1998), and *Mehalic v. Westmoreland County Tax Claim Bureau,* 111 Pa. Cmwlth. 398, 534 A.2d 157 (1987). These cases deal with private sales, not judicial sales and stand for the proposition that once a property has been offered at private sale and a proposed purchaser has made an offer, the original property owner cannot thwart that sale by offering all back taxes and penalties. *Getson.* That right is extinguished by the time the offer for the property was made. *Id.* Any "decision to accept or reject any proposed compromise of delinquent taxes is wholly within the discretion of the taxing authorities." *Id.,* 696 A.2d at 905–906; *Mehalic.* These decisions, however, do not preclude an owner from discharging a tax claim where, as here, the sale has been invalidated due to defective notice. While arguably any decision to accept or reject a proposed compromise of delinquent taxes must necessarily involve the taxing authorities, no such compromise has been made here.

Lastly, Keller contends that the alleged defective notice of sale was waived as the Riveras had "implied" or "constructive" notice of judicial sale. We disagree.

■ This Court has held that strict compliance with all notice requirements can be excused where actual notice has been proven. *In re Sale of Real Estate by Montgomery Tax Claim Bureau for 1997 Delinquent Taxes,* 836 A.2d 1037 (Pa. Cmwlth.2003); *Stanford–Gale; Sabbeth v. Tax Claim Bureau of Fulton County,* 714 A.2d 514 (Pa.Cmwlth.1998), *petition for allowance of appeal denied,* —— Pa. ——, —— A.2d —— (No. 0818 Allocatur Docket 1976, filed April 13, 1999). Actual notice may also exist in the form of implied actual notice, as well as express actual notice. *Sabbeth.* Relying upon *Sabbeth,* Keller contends that the Riveras had either "implied" or "constructive" notice of the judicial sale.

In *Sabbeth,* the property owner and taxpayer on the property in previous years was imputed to have actual notice of an impending tax sale even though she claimed that she did not actually receive or open the notice until 53 days after the sale. This Court found that the owner's claims that she was without actual notice of the tax sale were nothing short of "incredible." *Sabbeth.* The record showed:

> Sabbeth received notices for two years stating that the taxes assessed on the subject property were in arrears. Sabbeth worked directly across the street from the subject property on which notices were posted stating that the subject property was subject to tax sale. Most importantly, Sabbeth regularly went to her office to review the mail. It was in this office where a certified letter of notice from the Bureau remained upon her desk unattended for fifty-three days until its discovery the very day of the tax sale.

*Id.,* 714 A.2d at 517. We held that implied notice is encompassed in the definition of actual notice. *Id.* Based upon the circumstances involved, we concluded that the owner had notice of the tax sale of the subject property but sought to avoid the consequences of her inaction by claiming complete ignorance. *Id.*

■ In this case, there is no testimony or evidence that the Riveras had knowledge that their property was listed for judicial sale. Although Keller attempts to place the blame on the Riveras for failing to provide the Bureau with their change of address in a timely fashion, the fact remains that the Bureau neglected its statutory duty to exercise reasonable efforts to notify the Riveras of the impending sale of their property as required by the Law. We, therefore, conclude that the procedur-

al defects of notice of sale have not been waived.

Accordingly, we affirm the order of the trial court granting the Riveras' petition to set aside the judicial sale and remand the case to the trial court for consideration of Keller's petition for improvements.

## ORDER

AND NOW, this 1st day of September, 2004, the order of the Court of Common Pleas of Carbon County (trial court), at No. 02–0084, dated May 28, 2003, is AFFIRMED and the case is REMANDED to the trial court for consideration of Jason Keller's petition for improvements.

Jurisdiction relinquished.