**John B. PACELLA, Appellant**

v.

**WASHINGTON COUNTY TAX CLAIM BUREAU and E.D. Lewis.**

Commonwealth Court of Pennsylvania.

Argued Nov. 8, 2010.

Decided Dec. 23, 2010.

Gary M. Scoulos and Richard DiSalle, Pittsburgh, for appellant.

Blane A. Black, Monongahela, for appellee Washington County Tax Claim Bureau.

David E. Holland, Erie, for appellee E.D. Lewis.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and FLAHERTY, Senior Judge.

OPINION BY President Judge LEADBETTER.

John B. Pacella appeals from the order of the Court of Common Pleas of Washington County denying his petition to set aside the upset sale and/or to redeem his property. Pacella challenges the trial court's determination that The Valley Independent, one of the two newspapers in which the Washington County Tax Claim Bureau (Bureau) published a notice of the upset sale, was a newspaper "of general circulation in the county" under Section 602(a) of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.602(a). Pacella further challenges the court's conclusion that he had no right to redeem the property after the tax sale under Section 607(g) of the Tax Sale Law, 72 P.S. § 5860.607(g), and that Section 32(a) of the Act of May 16, 1923, P.L. 207, *as amended*, commonly known as the Municipal Claims and Tax Liens Act (Tax Liens Act), 53 P.S. § 7293(a), granting a redemption right after the sale does not apply to this matter.

Pacella owned a residential property located at 548 Circle Drive in Peters Township, Washington County and has resided on the property since 2002. When Pacella was delinquent on real property taxes for the tax year 2008, the Bureau sent him a tax return and claim notice by certified mail and a pre-sale warning letter by first-class mail in May 2009.[1] On July 14, the

1. Pacella's property was previously listed for an upset sale in 2008 for the delinquent taxes

Bureau sent him a notice of upset sale scheduled for September 23 by certified mail. The Bureau also posted the notice on his property on August 17 and advertised the upset sale in the Washington County Legal Journal and two newspapers, The Observer–Reporter and The Valley Independent, on August 20. Pacella admits that he received the notices sent by mail and saw the posting of the tax sale notice on his property.

At the September 23, 2009 upset sale, E.D. Lewis purchased Pacella's property for the upset sale price of $9077.48 as the sole bidder.[2] After receiving a notice informing him that his property had been sold at the upset sale, Pacella filed a petition to set aside the sale and/or to redeem the property on November 5, alleging that the upset sale should be invalidated for the Bureau's failure to comply with Section 602(a) of the Tax Sale Law, which provides:

> At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once *in two (2) newspapers of general circulation in the county, if so many are published therein,* and once in the legal journal, if any, designated by the court for the publication of legal notices. [Emphasis added.]

Pacella also claimed that he had a right to redeem the property under Section 32(a) of the Tax Liens Act.[3]

for the prior tax years. He subsequently paid those delinquent taxes.

**2.** Pursuant to Section 605 of the Tax Sale Law, 72 P.S. § 5860.605, the upset sale price included the delinquent tax amount of $2794.53 for the tax year 2008, interests, costs of sale and the amount of tax levied for the current 2009 tax year.

**3.** Section 32(a) of the Tax Liens Act provides in relevant part:

At a hearing before the trial court, the Bureau's operations manager, Yvonne Orsatti, testified that the Bureau complied with all of the notice requirements under the Tax Sale Law by giving the tax sale notice by mail, publication and posting before the sale and the notice of actual sale. She further testified that the Bureau had advertised tax sales in the Observer–Reporter and The Valley Independent for over twenty-one years.

Pacella testified that the value of his property was between $120,000 and $130,000 and that his poor health caused the delinquency of tax payment. He claimed that The Valley Independent is not "a newspaper of general circulation" under Section 602(a) of the Tax Sale Law because its circulation was confined to the southeastern section of Washington County, representing only 16.7% of the geographical area of the county. He submitted charts and graphs to show the areas of Washington County where The Valley Independent and the Pittsburgh Post Gazette were circulated.

Pacella also presented the testimony of Jeff Simmons, the circulation director of Trib Total Media that owns The Valley Independent. Simmons testified that The Valley Independent is published in Westmoreland County and that 5720 copies of its daily edition are circulated in 17 zip code areas of Washington County, not including Peters Township where Pacella's property and 32 other properties listed for

> The owner of any property sold under a tax or municipal claim ..., or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section [disallowing redemption of a vacant property], redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed....

the upset sale were located, reaching 6.8% of Washington County households. Gary Owens, the Pittsburgh Post Gazette's sales and circulation manager, testified that the Pittsburgh Post Gazette circulates 10,778 copies daily in Washington County, including Peters Township, and reaches 12.8% of Washington County households.

The trial court found that The Valley Independent is a newspaper of general circulation. The court noted that it would be burdensome to the Bureau and cost-prohibitive to taxpayers to require publication of a tax sale notice in two newspapers with greatest circulation or with circulation in the specific areas of Washington County. The court also rejected Pacella's contention that he should be permitted to redeem the property under Section 607(g) of the Tax Sale Law, which provides in relevant part:

> If no objections or exceptions are filed or *if objections or exceptions are finally overruled and the sale confirmed absolutely,* the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, shall not thereafter be inquired into judicially in equity or by civil proceedings by the person in whose name such property was sold, . . . except with respect to the giving of notice under the act, to the time of holding the sale, or to the time of petitioning the court for an order of sale. *There shall be no period of redemption after such sale* and the sale shall be deemed to pass a good and valid title to the purchaser, free from any liens or encumbrances whatsoever, except such liens as are hereafter specifically saved, and in all respects as valid and effective as if acquired by a sheriff's deed. [Emphasis added.]

The court interpreted Section 607(g) as permitting redemption of the property after the upset sale only when objections or exceptions to the sale are sustained, and the sale is invalidated. The court also cited Section 501(c) of the Tax Sale Law, 72 P.S. § 5860.501(c), which provides that "[t]here shall be no redemption of any property after the actual sale thereof." The court concluded that the redemption right under Section 32(a) of the Tax Liens Act does not apply to an upset sale conducted under the Tax Sale Law. The court accordingly denied Pacella's petition and upheld the upset sale. Pacella's appeal to this Court followed.[4]

The purpose of tax sales "is not to strip the taxpayer of his property but to ensure the collection of taxes." *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985) [quoting *Hess v. Westerwick,* 366 Pa. 90, 98, 76 A.2d 745, 748 (1950) ]. A tax claim bureau must provide three separate methods of notice to each property owner: notification of a tax sale by certified mail and publication of the notice at least thirty days prior to the sale and posting of the notice on the property at least ten days prior to the sale. Section 602 of the Tax Sale Law. The tax claim bureau must strictly comply with these notice requirements to guard against deprivation of property without due process of law. *Gladstone v. Fed. Nat'l Mortgage Ass'n,* 819 A.2d 171 (Pa.Cmwlth. 2003). The presumption of regularity attached to tax sales exists only until an objection or exception to the tax sale is filed raising a deficient tax sale notice. *In*

---

4. In this tax sale case, based on the issues presented, the scope of our appellate review is limited to determining whether the trial court clearly erred as a matter of law, a question over which our standard of review is plenary. *Steinbacher v. Northumberland County Tax Claim Bureau,* 996 A.2d 1095 (Pa.Cmwlth. 2010).

*re Upset Sale Tax Claim Bureau McKean County,* 965 A.2d 1244 (Pa.Cmwlth.2009), *appeal denied,* 602 Pa. 682, 981 A.2d 221 (2009). If any notice is defective, the tax sale is void and must be set aside. *Id.* The Bureau has the burden of proving compliance with the notice requirements. *Gladstone.*

Pacella argues that the Bureau failed to comply with the publication requirement in Section 602(a) of the Tax Sale Law. Pacella maintains that The Valley Independent is not a newspaper of general circulation in Washington County and that the trial court's contrary finding is not supported by substantial evidence. According to Pacella, the court's decision sanctioned the Bureau's practice of advertising tax sales in The Valley Independent with only modest circulation in a small area of Washington County, which does not serve the purpose of publication requirement.[5]

■ The Legislature enacted the Newspaper Advertising Act, 45 Pa.C.S. §§ 301–310, to provide uniformity in the publication of legal notices and official advertisement. Section 302(1), 45 Pa.C.S. § 302(1). Section 307 of the Newspaper Advertising Act, 45 Pa.C.S. § 307, provides in relevant part:

> No legal proceeding, matter, or case in which notice is required to be given by official or legal advertising, shall be binding and effective upon any interested person unless such official and legal advertising is printed and published in the *newspapers of general circulation,* official newspapers, and legal newspa-

pers defined by this title, in the manner and as required by statute....

The term "newspaper of general circulation" is defined as "[a] newspaper issued daily, or not less than once a week, intended for general distribution and circulation, and sold at fixed prices per copy per week, per month, or per annum, to subscribers and readers without regard to business, trade, profession or class." 45 Pa.C.S. § 101(a). This definition applies to legal notice provisions of 45 Pa.C.S. and "any other law relating to printing or newspaper advertising." *Id.*

Pacella's own evidence established that The Valley Independent publishes its editions in Westmoreland County and circulates 5720 copies daily in Washington County. Pacella does not dispute judicial notice taken by the trial court that The Valley Independent is "issued daily, intended for general distribution and circulation, and [is] sold at fixed prices to subscribers and readers regardless of business, trade, profession, or class" Trial Court's February 22, 2009 Opinion at 3. The record thus supports the trial court's finding that The Valley Independent is a newspaper of general circulation in Washington County. *See also Mateer v. Swissvale Borough,* 335 Pa. 345, 8 A.2d 167 (1939) [holding that the newspaper sold in the borough but published in another borough was a newspaper of general circulation in that borough under the same definition of that term found in Section 3(4) of the former Newspaper Advertising Act, Act of May 16, 1929, P.L. 1784, 45 P.S. § 3(4) ].

---

5. This Court has explained the purpose of the publication requirement as follows:

> [T]he purpose of the advertising was to notify the public in general. Not only does this tend to make the sale "well-attended by bidders"... but also it informs many people who may be concerned for the welfare of the owners. Such advertising, calling attention to the owners' plight, might prompt these people to take such steps as they may consider appropriate to see to it that the owners' interests are protected.

*Hicks v. Och,* 17 Pa.Cmwlth. 190, 331 A.2d 219, 220 (1975) (quoting *Hess,* 366 Pa. at 95, 76 A.2d at 747).

Pacella concedes that The Valley Independent falls within the definition of a newspaper of general circulation. He also concedes that the Bureau is not required to advertise a tax sale in a newspaper with circulation in Peters Township where his property is located. Without citing any authority, however, he asserts that "the newspaper utilized by the tax [claim] bureaus must have sufficient penetration, both in terms of number of editions circulated, and the geographical area of penetration, to effectively foster the purposes of the notice requirements of the ... Tax Sale Law." Pacella's Brief at 22. He submits that advertising the tax sale in The Valley Independent, which mainly circulates in the "rust belt" area of Washington County does not serve the purposes of the publication notice. *Id.* at 23. The Bureau counters that Pacella's approach would overburden the Bureau because it would be required to select newspapers circulated broadly enough to reach all of the municipalities where the properties listed for the tax sale are located and that such newspapers may not exist.

Pacella's position is not supported by the plain and unambiguous language of 45 Pa. C.S. § 101(a) defining a newspaper of general circulation. Where, as here, the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b); *Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957 (2007). Neither 45 Pa.C.S. § 101(a) nor Section 602(a) of the Tax Sale Law requires the Bureau to select newspapers with the greatest circulation or with circulation in a certain area of the county. We may not read such additional requirements into a statutory provi-

sion where the legislature has failed to do so. *Media v. Dep't of Transp.*, 661 A.2d 479 (Pa.Cmwlth.1995). *See also Crouse v. Borough of Riegelsville*, 67 Pa. D. & C.2d 736, 744 (1974) (holding that only three subscriptions within the borough were sufficient to establish that the newspaper was of "general circulation in the borough" under the ordinance).

It must be also noted that Section 602(a) of the Tax Sale Law requires publication of tax sale notice in two newspapers of general circulation "in the county, *if so many are published* therein." (Emphasis added.) [6] Pacella does not dispute that the Observer–Reporter is the only newspaper of general circulation published in Washington County. Because The Valley Independent is published in Westmoreland County, not in Washington County, the Bureau would have complied with the publication requirement in Section 602(a) by publishing the notice only in the Observer–Reporter, regardless of whether The Valley Independent is a newspaper of general circulation.

Pacella next argues that Article V, Section 501(c) of the Tax Sale Law disallowing redemption of the property after the tax sale does not apply to this matter because his property was sold at an upset sale conducted under Article VI of the Tax Sale Law, not Article V, and that he had a right to redeem the property under Section 607(g) of the Tax Sale Law. The statutory scheme of tax sales and the plain and unambiguous language of the Tax Sale Law provisions do not support Pacella's argument.

■ The Tax Sale Law was enacted in 1947 creating a tax claim bureau in each county, except for counties of the first class, and authorizing the bureau to re-

---

**6.** Webster's Third New International Dictionary 1837 (2002) defines "publish" to include "to produce for publication or allow to be issued for distribution or sale."

ceive and collect taxes. Sections 201 and 204 of the Tax Sale Law, 72 P.S. §§ 5860.201 and 5860.204. The dominant purpose of the Tax Sale Law is to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of title of the property sold at a tax sale. *In re Sale of Real Estate by Venango County Tax Claim Bureau*, 68 Pa. Cmwlth. 609, 449 A.2d 879 (1982). The tax claim bureau acts as the agent of the taxing district in collecting taxes and in managing and disposing of the property. Section 208, 72 P.S. § 5860.208. All taxes lawfully levied on the property constitute first liens on the property and are fully paid and satisfied out of the proceeds of the tax sale. Section 301, 72 P.S. § 5860.301. Only the Commonwealth's tax lien is given a higher priority in payment out of the sale proceeds. *Id.*

Section 501(a) of the Tax Sale Law permits the property owner, heirs or any other interested person to "cause the discharge [7] of tax claims and liens entered against the property" by paying the amount of tax claims, interests thereon and all accrued taxes and costs before July 1 of the year following a notice of claim. If the tax claims are discharged, the property is removed from exposure to a tax sale. *Id.* Section 501(c) provides that "[t]here shall be no redemption of any property after the actual sale thereof." An "actual sale" is defined as "payment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser *at upset sale under sections 605 through 609*" of the Tax Sale Law. (Emphasis added.) Section 102 of the Tax Sale Law, 72 P.S. § 5860.102.

Under Section 601(a) of the Tax Sale Law, 72 P.S. § 5860.601(a), the tax claim bureau must schedule an upset sale of the property between the second Monday of September and October 1 if the property has not been discharged from the tax claims or removed from a tax sale. The Bureau must make a consolidated return to the court of common pleas within sixty days after the actual sale. Section 607(a).[8] The court must then confirm the sale nisi within thirty days of the consolidated returns, if the sale appears to be regularly conducted. *Id.* Objections or exceptions may be filed within thirty days after the court enters a confirmation nisi. Section 607(a.1).

If no objections or exceptions are filed questioning the regularity or legality of the sale, a decree of absolute confirmation is entered as of course by the prothonotary. Section 607(c). If any objections or exceptions are filed and overruled, the court enters a decree of absolute confirmation. Section 607(d). If the objections or exceptions "are sustained and the court deems the defect not amendable, it shall ... invalidate the sale and order another sale...." Section 607(e). Section 607(g) provides that "[t]here shall be no period of redemption after such sale." Under Section 607(g), "[o]nce the sale is confirmed absolutely, no right of redemption can exist in a former owner." *Rivera v. Carbon County Tax Claim Bureau*, 857 A.2d 208, 216 (Pa.Cmwlth.2004).

■■ Our examination of the Tax Sale Law provisions thus clearly indicates that the property owner's right to redeem the

7. Section 501(a) of the Tax Sale Law previously used the terms "discharge" and "redeem" interchangeably. The 1998 amendment to Section 501(a) changed the term "redeem" to "discharge."

8. If there are no bids at the upset sale price, all of the property owner's rights are transferred to the tax claim bureau as the trustee by operation of law. *Bell v. Berks County Tax Claim Bureau*, 832 A.2d 587 (Pa.Cmwlth. 2003).

property is extinguished at the conclusion of the actual sale even if no bid is made for the upset sale price, unless the trial court sustains objections or exceptions to the sale and sets aside the sale. Sections 501(c), 607(e) and 607(g); *Rivera.* Unlike in *Rivera* where the owners could redeem the property because the tax sale was invalidated, the trial court in this matter denied Pacella's petition to set aside the upset sale and confirmed the sale. Hence, Pacella had no right to redeem the property under the Tax Sale Law.

Pacella nonetheless relies on Section 32(a) of the Tax Liens Act to support the argument that he had a right to redeem the property after the actual sale.

The Tax Liens Act enacted in 1923 and the Tax Sale Act enacted in 1947 set forth similar methods of levying and preserving municipal tax liens. *Pa. Land Title Ass'n v. E. Stroudsburg Area Sch. Dist.*, 913 A.2d 961 (Pa.Cmwlth.2006). Both statutes declare that all taxes imposed and assessed by the taxing authorities are first liens on the property. Section 301 of the Tax Sale Law; Sections 1 and 2 of the Tax Liens Act, 53 P.S. §§ 7102 and 7103.

■ The Tax Sale Law, however, did not repeal the Tax Liens Act because it was not intended to be a substitute for the Tax Liens Act and did not establish a uniform and mandatory system of tax collection. *City of Allentown v. Kauth,* 874 A.2d 164 (Pa.Cmwlth.2005).[9] Section 39.5 of the Tax Liens Act, added by Section 8

of the Act of August 14, 2003, 53 P.S. § 7193.5, provides that "[t]he tax claim bureaus ... may adopt and use the procedures set forth in this act in addition to the procedures set forth in ... the 'Real Estate Tax Sale Law.'" Section 201.1(a) of the Tax Sale Law, added by Section 2 of the Act of March 22, 2002, P.L. 205, 72 P.S. § 5860.201a(a), also provides that "[i]n lieu of or in addition to creating a bureau, counties are authorized to provide by ordinance for the appointment and compensation of such agents, clerks, collectors and other assistants and employe ... for the collection and distribution of taxes under this act." Thus, the adoption of the tax collection mechanism under either statute is optional, not mandatory. *Cedarbrook Realty, Inc. v. Nahill,* 484 Pa. 441, 399 A.2d 374 (1979). The two statutes are not mutually exclusive and operate concurrently with each other. *Pa. Land Title Ass'n.*[10]

■ Pacella does not dispute that his property was sold under the Tax Sale Law, not under the Tax Liens Act. As the Pennsylvania Supreme Court held:

When a tax sale is commenced under a particular Act of Assembly, the procedure therein prescribed must be followed and under that act alone must the validity and effect of the sale be tested. Other legislation providing a different procedure or result cannot be used either to sustain such sale or secure additional rights or results. The act under

9. A statute repeals all former statutes upon the same subject whenever it "purports to be a revision of all statutes upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former statute and is intended as a substitute for such former statute," or whenever it "purports to establish a uniform and mandatory system covering a class of subjects." Section 1971(a) and (b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1971(a) and (b). In

all other cases, a later statute should not be construed "to supply or repeal an earlier statute unless the two statutes are irreconcilable." 1 Pa.C.S. § 1971(c).

10. We note that unlike the Tax Liens Act, the Bureau, not the sheriff, makes a deed in fee simple to the purchaser for the property sold at an upset sale. Section 608 of the Tax Sale Law, 72 P.S. § 5860.608.

which the proceeding is had must show the authority and the effect of such sale. *Gordon v. Harrisburg,* 314 Pa. 70, 73, 171 A. 277, 278 (1934). *See also First Fed. Sav. & Loan Ass'n of Lancaster v. Swift,* 457 Pa. 206, 321 A.2d 895 (1974) (holding that the rights of the parties on the property sold pursuant to the Tax Sale Law were established under that statute). Because the upset sale was held pursuant to the Tax Sale Law, that statute alone determines whether Pacella has the redemption right. Therefore, Pacella's contention that his right to redeem the property is implied by Section 32(a) of the Tax Liens Act must be rejected.

It is well-established that the Court may not disregard the express and plain language of a statute under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b); *D.Z. v. Bethlehem Area Sch. Dist.,* 2 A.3d 712 (Pa.Cmwlth.2010). Further, a statute must be construed to give effect to all of its provisions. 1 Pa.C.S. § 1921(a); *Borough of Wilkinsburg v. Colella,* 961 A.2d 265 (Pa.Cmwlth.2008). To accept Pacella's argument that he had the redemption right under the Tax Sale Law would result in disregarding the plain and unambiguous language of Sections 501(c) and 607(g) of the Tax Sale Law expressly disallowing redemption after the actual sale, unless the sale is invalidated, and would render those provisions superfluous.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 23rd day of December 2010, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby AFFIRMED.