# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Beck,                            :
                    Appellant            :
                                         :
            v.                           :      No. 236 C.D. 2018
                                         :      Argued:  October 15, 2018
Fayette County Tax Claim Bureau          :
and Stacey McCarty                       :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ELLEN CEISLER, Judge


**OPINION NOT REPORTED**


MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                            FILED: November 16, 2018


        The Court of Common Pleas of Fayette County (trial court) ordered Richard
Beck (Beck) to reimburse the Fayette County Tax Claim Bureau (Bureau) and
Stacey McCarty (McCarty) for costs they incurred related to a September 2016 tax
upset sale, at which the Bureau sold Beck's Ohiopyle property to McCarty for
unpaid taxes.  We previously held the tax sale was void for defective service.  *Beck
v. Fayette Cty. Tax Claim Bureau* (Pa. Cmwlth., No. 205 C.D. 2017, filed Jan. 3,
2018) (*Beck I*).  After we reversed the trial court related to the validity of the tax
sale, McCarty filed a Petition for Restitution (Petition) with the trial court, in
which she sought reimbursement for the cost of various improvements she made to
the property in the interim.  Without Beck's response to the Petition or a hearing,

the trial court issued an order directing Beck to pay McCarty $13,501.51 in restitution, which was based upon testimony from the hearing on Beck's petition to set aside the tax sale, in addition to ordering Beck to pay the Bureau delinquent taxes, "all direct costs of notice of the sale plus a prorated portion of the advertising." (Jan. 29, 2018, Trial Court Order.) If Beck failed to make the payment to the Bureau by February 20, 2018, the trial court warned his petition to set aside the tax sale would be dismissed, his exceptions and objections to the tax sale would be denied, and the tax sale deed to McCarty would be confirmed. (*Id.*) Beck appeals that order to this Court.

## I.     Procedural and Factual History

A more detailed history of this case is set forth in *Beck I*, but a brief recitation of the facts is helpful here to understand how the parties got to this point. In April 2016, the Bureau sent Beck notice that his vacation property located at 143 Grant Street in Ohiopyle would be sold at a tax sale for unpaid 2014 taxes. The notice was sent to Beck at a post office box in Ohiopyle via certified mail, return receipt requested. The notice was subsequently returned to the Bureau marked "Return to Sender, Unclaimed, Unable to Forward." *Beck I*, slip op. at 2. The Bureau made no further attempt to locate Beck. *Id.* at 3. On September 19, 2016, McCarty purchased the property at the tax sale. Beck learned of the tax sale approximately one month later and filed a petition seeking to set aside the tax sale wherein he challenged the notice provided. However, the petition to set aside was served only on the **prior solicitor** of Fayette County and not on the Bureau. Oblivious to Beck's challenge of the tax sale, the Bureau issued a deed to McCarty

2

on December 6, 2016. Upon receipt of the deed, McCarty made a number of improvements to the rundown property.[1]

Following a hearing at which Beck, McCarty, and a representative of the Bureau testified, the trial court denied Beck's petition to set aside the tax sale. Beck appealed to this Court.[2] Based upon the Bureau's admission that it undertook no additional efforts to locate Beck after the notice sent to the post office box was returned unclaimed, we found the Bureau did not satisfy its statutory obligations to locate Beck. *Id.* at 8-9. We held that even though the Bureau had the correct address, it still had an obligation under Section 607.1(a) of the Real Estate Tax Sale Law[3] (RETSL) to take additional steps to locate Beck. *Id.* at 9. Accordingly,

---

[1] Upon learning of the tax sale, Beck left McCarty a note advising her that he was appealing and to contact his counsel, which she did. She also contacted the Bureau, which advised her of Beck's right to appeal within 30 days. Upon expiration of the appeal period, McCarty contacted the Bureau again, was told no appeal was filed, and then started making the improvements. *Beck I*, slip op. at 4.

[2] In *Beck I*, McCarty and the Bureau argued that Beck did not properly perfect his challenge because he did not serve McCarty or the Bureau with his petition to set aside the tax sale. We held that because the purchase had not yet been confirmed at the time Beck filed his challenge, McCarty was not yet an indispensable party. *Beck I*, slip op. at 6. As for service on the Bureau, we noted it was problematic that the county's former solicitor was served, instead of the Bureau itself, but concluded that because the Bureau did appear and participate in the hearing, any error was cured. *Id.* at 7.

[3] Act of July 7, 1947, P.L. 1368, *as amended*, added by Section 30 of the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a(a). Section 607.1(a) provides:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and **such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification** by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, **the bureau must exercise reasonable efforts to discover the whereabouts of such person or**

**(Footnote continued on next page…)**

3

we reversed the trial court's order. In doing so, we also expressed our opinion that McCarty should be made whole.[4] *Id.* at 7 n.11.

Based upon our opinion in *Beck I*, on January 23, 2018, McCarty filed her Petition seeking reimbursement for the cost of the improvements she made before the sale was set aside. In her Petition, McCarty alleged she "made significant improvements to the property expending in excess of $13,500." (Petition ¶ 3.) She

---

**(continued…)**

> **entity and notify him**. The bureau's efforts **shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.** When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

*Id.* (emphasis added).

[4] Specifically, we stated:

> While this error has been cured, what has not yet been cured is the prejudice that [McCarty] suffered when she, believing no appeal had been filed, invested a significant sum of money in renovating the rundown property. Had she known of the appeal, [McCarty] testified she would not have taken the steps she did. The harm [McCarty] suffered is a direct result of [Beck]'s failure to, at a minimum, serve the Bureau. Therefore, [McCarty] is entitled to be made whole.

*Beck I*, slip op. at 7 n.11. As discussed herein, it is apparent that McCarty and the trial court place great reliance on this footnote for support of the trial court's order. In its Rule 1925(a) opinion, the trial court goes so far as to say that it "entered the order upon direction of" our opinion in *Beck I*. (Mar. 5, 2018, Rule 1925(a) Opinion at 1.) It was not the intent of this Court to direct the trial court to grant McCarty's Petition without a hearing or application of the law, and we apologize to the extent our opinion was unclear.

4

requested the trial court to schedule a hearing on her request. (*Id.*, Wherefore clause.)

Instead, on January 29, 2018, the trial court issued its order directing Beck to pay the Bureau and McCarty or risk having the tax sale confirmed. In ordering Beck to pay McCarty $13,501.51, the trial court noted that "amount [wa]s in compliance with Footnote 11" of our opinion in *Beck I* and was supported by the testimony of McCarty at the January 5, 2017 hearing on Beck's petition to set aside the tax sale; therefore, a hearing was not required. (Jan. 29, 2018, Trial Court Order at 2 n.1.) On February 20, 2018, which was the day Beck was supposed to pay the Bureau for past due taxes and its costs pursuant to the trial court's order, Beck filed his notice of appeal.

One week earlier, McCarty filed a Petition for Counsel Fees, alleging she incurred more than $7500 in counsel fees intervening in this action. (Petition for Counsel Fees ¶ 14.) She sought a hearing to determine her entitlement to these expenses. Because of Beck's appeal, the trial court stayed action on the Petition for Counsel Fees. (Feb. 23, 2018, Trial Court Order.) In doing so, the trial "[c]ourt note[d] that [it] believe[d] the award of counsel fees would be appropriate and in accordance with the previous order of the Commonwealth Court in this matter and [it] state[d] this opinion on the record so that the Commonwealth Court may address same in the instant appeal." (*Id.*)

On appeal,[5] Beck raises two issues: (1) whether the trial court erred in ordering restitution and disregarding this Court's prior ruling, which invalidated

---

[5] Our review in tax sale cases "is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision with a lack of supporting evidence." *Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006).

the tax sale; and (2) whether the trial court abused its discretion in ordering restitution to McCarty without a hearing. Beck argues that by ordering him to pay the Bureau and McCarty, the trial court effectively found him financially liable for a sale that this Court found unlawful because the Bureau did not fulfill its statutory obligations. Beck claims it is illogical to order him to reimburse the Bureau for its expenses since it is the Bureau's lack of due diligence that resulted in the tax sale being invalidated. He also asserts that the trial court's order effectively overruled this Court's order because Beck's noncompliance with the trial court's order would result in confirmation of the tax sale, which this Court already determined was invalid. As for McCarty's losses, Beck asserts that blame is also on the Bureau, not him, because had the Bureau fulfilled its obligations, this entire mess could have been averted. Finally, Beck argues that the trial court abused its discretion in ordering him to reimburse McCarty without a hearing.

The Bureau argues that the trial court properly ordered Beck to pay the Bureau's costs because he did not provide it with the correct address before the sale. In addition, the Bureau points out that Beck failed to serve it with his petition to set aside the tax sale. The Bureau also argues that the trial court's order is consistent with this Court's prior opinion in *Beck I*, wherein we noted that McCarty should be made whole. Ordering restitution to McCarty, as the trial court did, makes McCarty whole, the Bureau claims.

McCarty, like the Bureau, also cites this Court's prior opinion as support for the trial court's order. As for Beck's claim that a hearing was required before restitution could be awarded, McCarty argues the trial court did hold such a hearing, the January 5, 2017 hearing on Beck's petition to set aside the tax sale, at

6

which time evidence of costs was presented. Therefore, no further hearing was necessary.

## II. Discussion

We begin with Beck's argument that the trial court was without authority to order him to pay either the Bureau or McCarty for costs they incurred as a result of the tax sale. Beck is correct with regard to the Bureau, but not with regard to reimbursing McCarty for the improvements she made to the property.

First, concerning the Bureau, the trial court ordered Beck to pay delinquent taxes plus interest, and "all direct costs of notice of the sale plus a prorated portion of the advertising" by February 20, 2018, or else his petition to set aside the tax sale would be dismissed, his exceptions and objections to the sale would be denied, and the tax sale deed to McCarty would be confirmed. (Jan. 29, 2018, Trial Court Order.) The problem with the trial court's order is that it directs payment relating to the September 2016 tax sale, which we previously declared void. Under Section 607(e) of the RETSL, if a party files objections or exceptions to an upset sale, which are sustained and the defect is not amendable, the trial court "shall, by its order or decree, invalidate the sale and order another sale to be held in conformity with this act at such time and under such conditions as it shall fix." 72 P.S. § 5860.607(e). It is well settled that if notice is defective, a tax sale is void and must be set aside. *Pacella v. Washington Cty. Tax Claim Bureau*, 10 A.3d 422, 426 (Pa. Cmwlth. 2010). While Beck ultimately remains responsible for paying the delinquent taxes, if he fails to do so, the Bureau's recourse is to pursue another tax sale. The trial court cannot declare a void sale valid. Nor can it order Beck to pay costs associated with a sale that was declared void because the Bureau did not

7

comply with its statutory obligations. In short, we agree with Beck that the trial court erred in awarding costs to the Bureau.

However, the trial court could order Beck to pay restitution to McCarty for improvements she made to the property.[6] In *Rukuson v. Dantzler*, 812 A.2d 776 (Pa. Cmwlth. 2002), this Court addressed a similar issue. There, a property owner sought to void a judicial tax sale for lack of proper notice. The purchaser of the property counterclaimed seeking to recover more than $13,000 for the cost of improvements she made. As here, the purchaser made the improvements to the property **after** the tax claim bureau tendered her a deed. The Court of Common Pleas of Dauphin County (common pleas) in *Rukuson* voided the sale and also awarded the purchaser damages for the improvements made. In doing so, it reasoned that the purchaser had no knowledge of the defect and the property owner benefited from the improvements.[7] On appeal, this Court agreed with common pleas, and because there was no evidence that the purchaser in *Rukuson* knew or

---

[6] Beck argues the Bureau should be responsible for reimbursing McCarty. However, a Bureau is liable, at most, for reimbursing a purchaser the amount of the bid plus interest. *In re Upset Sale of Properties (Skibo)*, 560 A.2d 1388, 1389 (Pa. 1989). Otherwise, it is immune from damages. *Id.*

[7] The property owner also argued the applicability of Section 20 of the Act of April 12, 1842, P.L. 262, 72 P.S. § 5875, (1842 Act), which provides, in relevant part, that a buyer cannot recover for improvements made within two years or if the buyer knew of the defects in the tax title at the time of the sale. Because the improvements were made within two months, the property owner contended the purchaser could not recover. *Rukuson*, 812 A.2d at 779. Common pleas rejected this argument, questioning the applicability of the 150-year-old statute after enactment of the RETSL in 1947. *Id.* at 778. We agreed with common pleas' interpretation of the two statutes, and held that a more recently enacted section of the RETSL, which provides "[t]here shall be no redemption of any property after the actual sale" of the property, was in conflict with the 1842 Act, which referred to "tender of the redemption money" within two years of the sale. *Id.* at 779 (quoting Section 501(c) of the RETSL, 72 P.S. § 5860.501(c), and the 1842 Act, respectively). Accordingly, "the concern shown in [the 1842 Act] for rights of redemption during a two-year period after a sale no longer apply." *Id.*

had reason to know of the defects at the time of the tax sale, concluded she was entitled to recover for the improvements made. *Id.* at 779. In accordance with *Rukuson*, a purchaser, such as McCarty, can be awarded damages for the improvements made after being tendered a deed, when a tax sale is voided, and where there is no evidence that the purchaser knew or had reason to know of the defects at the time of the tax sale.

That leads us to Beck's second issue: whether the trial court abused its discretion in awarding McCarty $13,501.51 in damages without a hearing. The trial court, in its January 29, 2018 order and its March 5, 2018 Rule 1925(a) opinion, stated that it based its award on the "uncontradicted, uncontested testimony" of McCarty at the hearing on January 5, 2017. (Jan. 29, 2018, Trial Court Order; Mar. 5, 2018, Rule 1925(a) Opinion.) That hearing was held on Beck's petition to set aside the tax sale. (*See* Dec. 20, 2016 Order scheduling same.) While it is true that the trial court heard evidence at that hearing of the improvements that McCarty made, there are several reasons that this hearing and the evidence presented there are insufficient to support an award of damages for $13,501.51. First, at the time of the hearing, there was no petition for reimbursement pending; the only petition before the trial court was Beck's petition to set aside the tax sale. Yet, the trial court allowed the evidence over Beck's objection. (Hearing Transcript at 32.) The trial court allowed McCarty to testify, saying, "I would think that if we're going to get into money that she has spent in reliance on the deed that that could be something that we'd want to know depending on which way we go, so we'll hear her testimony." (*Id.* at 34.) However, Beck had no reason to know or be prepared to present evidence to rebut McCarty's testimony **in advance of the hearing.**

9

Second, the testimony presented was not competent evidence to support an award for $13,501.51. On the one hand, McCarty testified her "total out-of-pocket expenses . . . paid so far for materials and labor" was $13,501.51, but moments earlier she testified that she paid almost $7000 in materials and $4500 in labor, which is $2000 less than the total to which she testified. (*Id.* at 40-41.)

Third, it is apparent that even McCarty did not think the testimony at the January 5, 2017 hearing was a proper measure of her damages. This is evidenced by the fact that she requested a new hearing at the time she filed her Petition. (Petition ¶ 12.) Instead of scheduling a hearing, as McCarty requested, the trial court issued its order, awarding her $13,501.51. While this amount is close to the "in excess of $13,500" estimate she provided in her Petition for improvements, (Petition ¶ 3), it does not take into account the other costs and expenses she contends she is entitled to, such as costs and expenses incurred in transferring the deed and counsel fees, (*Id.* ¶ 11). As a result of the trial court's premature order, McCarty filed a second petition, the Petition for Counsel Fees, in which she also sought a hearing to determine her entitlement, not just to counsel fees, but also to other sums expended on the property, such as insurance, utilities, and transfer fees.[8]

---

[8] That petition was stayed pending Beck's appeal. As a general rule, Pennsylvania follows what is known as the "American Rule," which means "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482–83 (Pa. 2009). Section 2503(7) of the Judicial Code provides for an award of counsel fees as a sanction "for **dilatory, obdurate or vexatious conduct** during the pendency of a matter." 42 Pa. C.S. § 2503(7) (emphasis added). To make such an award, the trial court makes "specific finding[s] of dilatory, obdurate or vexatious conduct." *Twp. of S. Strabane v. Piecknick*, 686 A.2d 1297, 1301 (Pa. 1996). Consequently, on remand, to make such an award, the trial court would need to make a determination as to whether Beck's conduct since this action **(Footnote continued on next page…)**

10

Because the trial court abused its discretion by issuing its order awarding damages without an evidentiary hearing, we vacate the trial court's order and remand this matter for a hearing to determine whether McCarty knew or should have known about the defective notice at the time of the tax sale, and assuming she did not, what damages she incurred.[9]

## III.    Conclusion

Based upon the foregoing, we vacate the trial court's order and remand this matter for additional proceedings consistent with this opinion.

_____
**RENÉE COHN JUBELIRER,** Judge

_____
(continued…)
was commenced is dilatory, obdurate, or vexatious.  We emphasize that we express no opinion as to whether counsel fees are appropriate.

[9] Damages, if any, would be the value of improvements, which may or may not correspond to the cost of repairs. *Rukuson*, 812 A.2d at 780.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Beck,                  :
                Appellant   :
                          :
              v.           :   No. 236 C.D. 2018
                          :
Fayette County Tax Claim Bureau  :
and Stacey McCarty        :

# O R D E R

**NOW**, November 16, 2018, the order of the Court of Common Pleas of Fayette County dated January 29, 2018, is **VACATED**, and this matter is **REMANDED** for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

 

 

                                  _____

                                  **RENÉE COHN JUBELIRER,** Judge